2002 ND 25

**In the Interest of M.B.K.**

**Brian D. Grosinger, Petitioner and Appellee,**

v.

**M.B.K., Respondent and Appellant.**

**No. 20010108.**

Supreme Court of North Dakota.

Feb. 20, 2002.

Brian D. Grosinger, Assistant State's Attorney, Mandan, ND, for petitioner and appellee.

Wayne D. Goter, Goter Law Office, Bismarck, ND, for respondent and appellant.

Jean R. Mullen, Assistant Attorney General, Attorney General's Office, Bismarck, ND, for amicus curiae.

VANDE WALLE, Chief Justice.

[¶ 1] M.B.K. appealed from an order committing him to the care, custody, and control of the executive director of the North Dakota Department of Human Services for treatment as a sexually dangerous person. M.B.K. contends the State failed to establish he was "likely to engage in further acts of sexually predatory conduct" as required for commitment by N.D.C.C. § 25–03.3–13, and as a result, the evidence was insufficient to sustain the order of commitment. We conclude the district court's order was sufficiently supported by the evidence. Therefore, we affirm.

I

[¶ 2] M.B.K. was convicted by his plea of guilty to a class B felony of Gross Sexual Imposition in district court. M.B.K. was sentenced to six years imprisonment, of which three years were sus-

pended upon certain conditions. As M.B.K.'s release date drew near, the State filed a petition alleging M.B.K. is a sexually dangerous individual within the definition of Chapter 25–03.3 of the North Dakota Century Code and, as a result, he should be civilly committed.

[¶ 3] The district court conducted a preliminary hearing on the petition for committal, and found probable cause to believe M.B.K. was a sexually dangerous individual. Upon this finding, the district court ordered M.B.K. to be transported to the North Dakota State Hospital for evaluation.

[¶ 4] At the State Hospital Joseph Belanger, a psychologist, and Joanne Roux, a psychiatrist, both employed by the executive director of the North Dakota Department of Human Services at the State Hospital, evaluated M.B.K. Additionally, M.B.K. exercised his right under the Chapter to request an independent evaluator. Accordingly, Myron J. Veenstra, a psychologist employed by the executive director at the Northeast Human Service Center, conducted a third evaluation.

[¶ 5] At the hearing on the petition, testimony from each of the three evaluators was received. The trial court found the individual opinions of these experts were supported by the record. Accordingly, the district court found by clear and convincing evidence M.B.K. is a sexually dangerous individual. As a result, the district court, as required by N.D.C.C. § 25–03.3–13, for committal as a sexually dangerous person, committed M.B.K. to the care, custody, and control of the executive director of the North Dakota Department of Human Services.

[¶ 6] M.B.K. asserts the State failed to establish he was "likely to engage in further acts of sexually predatory conduct" as required by N.D.C.C. § 25–03.3–13 for commitment of a sexually dangerous per-son, and as a result, the evidence was insufficient to sustain the order of commitment.

[¶ 7] All three experts based their opinions upon interviews each conducted with M.B.K., a review of M.B.K.'s history, and a review of the results of a battery of risk assessment tests. All three experts ultimately diagnosed M.B.K. with the disorder of Pedophilia, Non-exclusive, Opposite Sex, as well as an Anti–Social Personality Disorder. Additionally, all three of the experts agreed M.B.K. is likely to engage in further acts of sexually predatory conduct. Dr. Belanger and Dr. Roux agreed that M.B.K.'s disorders would predispose any individual to further acts of sexually predatory conduct, even in the absence of the risk factors unique to M.B.K., which were analyzed by the risk assessment tests. At least one of the experts, Dr. Belanger, reasoned M.B.K.'s risk of re-offending was better than 50%, or more likely than not.

[¶ 8] The risk assessment inventories were relied upon by all three experts, though Dr. Veenstra thought some of the results were too high because some events in M.B.K.'s past were included that Dr. Veenstra would not have included. The tests used were the Rapid Risk Assessment for Sexual Offense Recidivism (RRASOR), the Static–99, the Violence Risk Appraisal Guide (VRAG), and the Psychology Check List Revised (PCL–R). The results of the RRASOR placed M.B.K. at a 37% risk of re-offending within ten years. The results of the VRAG placed M.B.K. at an 82% risk of committing some kind of violent offense within 10 years. The PCL–R placed M.B.K. at a 37% risk of re-offending among all male prison inmates and at a 52% risk of re-offending among male forensic patients. The results of the Static–99 placed M.B.K. at a 39% risk of re-offending within five years, 45% risk of re-

offending within ten years, and 52% risk of re-offending within fifteen years.

## II

[¶ 9] Our standard of review for appeals from commitments of sexually dangerous individuals under N.D.C.C. ch. 25–03.3 is "a modified clearly erroneous" standard. *In the Interest of M.D.*, 1999 ND 160, ¶ 34, 598 N.W.2d 799. That is, we affirm a trial court's order of committal "unless it is induced by an erroneous view of the law or if we are firmly convinced it is not supported by clear and convincing evidence." *Id.*

[¶ 10] Section 25–03.3–13, N.D.C.C., provides in part:

An individual may not be committed [as a sexually violent individual] unless evidence is admitted establishing that at least two experts have concluded the individual has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that makes that individual likely to engage in further acts of sexually predatory conduct.

[¶ 11] Therefore, the State must produce two experts to independently establish two elements: (1) that the respondent has some sort of disorder and (2) that disorder makes him or her "likely to engage in further acts of sexually predatory conduct."

[¶ 12] It is clear the State produced two experts and M.B.K. produced a third, and all concluded M.B.K. "has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that makes [him] likely to engage in further acts of sexually predatory conduct." N.D.C.C. § 25–03.3–13. M.B.K. contends, however, the phrase "likely to engage," as used in N.D.C.C. ch. 25–03.3 is unclear,

and should be construed by this Court to mean "much more likely than not" rather than merely likely. It is M.B.K.'s position that such a definition would raise the standard sufficiently so he would escape committal.

[¶ 13] Our legislature has not defined what "likely to engage" means, so we are to interpret its meaning. As we have explained by undertaking statutory interpretation:

Our primary goal is to ascertain legislative intent. We look first to the language of the statute. We read statutes as a whole to give meaning to each word and phrase, whenever fairly possible. If the language is clear and unambiguous, the legislative intent is presumed clear from the face of the statute. If the language of a statute is ambiguous, the court may resort to extrinsic aids to interpret the statute. A statute is ambiguous if it is susceptible to differing rational meanings.

*N.D. Securities Com'r v. Juran and Moody, Inc.*, 2000 ND 136, ¶ 6, 613 N.W.2d 503 (citations omitted).

[¶ 14] The meaning of the phrase "likely to engage" is susceptible to differing rational meanings. Several states have enacted sexual predator civil commitment statutes, and several of those states have also used "likely to engage" language in their statutes. In these states the phrase has been given various meanings. For example, the Arizona code uses the phrase "likely to engage in acts of sexual violence," Ariz.Rev.Stat. § 36–3701(7)(b), and while there is no definition of these terms elsewhere in the Arizona code, Arizona case law has defined them to mean "probable rather than merely possible." *Martin v. Reinstein*, 195 Ariz. 293, 987 P.2d 779, 800 (Ct.App.1999).

[¶ 15] The State of Missouri takes another approach. The Missouri code uses the phrase by way of defining who is a sexually dangerous person. The Missouri code provides: a "[s]exually violent predator, [is] any person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility . . . ." Mo.Rev. Stat. § 632.480(5).

[¶ 16] The fact that among the states we surveyed there exists different interpretations of the "likely to engage" language, illustrates the term is susceptible to varied interpretation. Because the statute is ambiguous, we may consider extrinsic evidence to interpret it. *N.D. Securities Com'r v. Juran and Moody, Inc.,* 2000 ND 136, ¶ 8, 613 N.W.2d 503. Section 1–02–39, N.D.C.C., provides a list of aids in determining the intention of legislation. This list includes laws upon the same or similar subjects. N.D.C.C. § 1–02–39(4).

[¶ 17] As discussed above, several states have recently enacted a sexual predatory statute, and some also used the "likely to engage" language. The Kansas code uses the phrase "likely to engage in repeat acts of sexual violence" and provides that this language means "the person's propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others." Kan. Stat. Ann. § 59–29a02(c). Similarly, the New Jersey statute provides: "Likely to engage in acts of sexual violence means the propensity of a person to commit acts of sexual violence is of such a degree as to pose a threat to the health and safety of others." N.J.Rev.Stat. § 30:4–27.26. Additionally, the Florida code uses the phrase and defines it as follows: "[l]ikely to engage in acts of sexual violence means the person's propensity to commit acts of sexual violence is of such a degree as to pose a

menace to the health and safety of others." Fla. Stat. Ch. 394.912(4). Significantly, the Florida Court of Appeals, while concluding this language was not unconstitutionally vague, further explained "the term 'likely' as used in the terminology 'likely to engage in acts of sexual violence' is a widely used term that is commonly understood by men and women of common intelligence to mean highly probable or probable and having a better chance of existing or occurring than not." *Westerheide v. Florida,* 767 So.2d 637, 652–53 (Fla.Dist. Ct.App.2000).

[¶ 18] We find these cases persuasive and we conclude the phrase "likely to engage in further acts of sexually predatory conduct" as used in N.D.C.C. § 25–03.3–13 means that the respondent's propensity towards sexual violence is of such a degree as to pose a threat to others. This definition prevents a contest over percentage points and the results of other actuarial tools, and allows experts to use the fullness of their education, experience and resources available to them in order to determine if an individual poses a threat to society.

[¶ 19] Under our interpretation of the statute, the trial court's finding was supported by clear and convincing evidence and therefore is not clearly erroneous. Accordingly, we affirm the order of commitment.

[¶ 20] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.