2004 ND 57

**In the Interest of D.V.A.**

**Leann K. Bertsch, Petitioner and Appellee,**

v.

**D.V.A., Respondent and Appellant.**

**No. 20030304.**

Supreme Court of North Dakota.

March 23, 2004.

Leann K. Bertsch, Assistant State's Attorney, Bismarck, ND, petitioner and appellee. Submitted on brief.

Todd A. Schwarz, Bismarck, ND, for respondent and appellant. Submitted on brief.

VANDE WALLE, Chief Justice.

[¶ 1] D.V.A. appealed from an order committing him to the care, custody, and control of the executive director of the North Dakota Department of Human Ser-

vices for treatment as a sexually dangerous individual. We affirm.

I

[¶ 2] D.V.A. was convicted by his plea of guilty to a class A felony of Gross Sexual Imposition in 1996. Prior to D.V.A.'s scheduled release from the North Dakota State Penitentiary, the Department of Corrections and Rehabilitation recommended the Burleigh County State's Attorney review D.V.A.'s criminal and mental health history to determine whether he should be committed as a sexually dangerous individual. *See* N.D.C.C. § 25–03.3–03.1. The State petitioned to have D.V.A. committed under chapter 25–03.3, N.D.C.C., as a sexually dangerous individual who is a danger to the physical or mental health or safety of others. *See id.* § 25–03.3–03.

[¶ 3] Probable cause to believe D.V.A. is a sexually dangerous individual was established at a preliminary hearing, and the district court ordered D.V.A. to be transported to the North Dakota State Hospital for evaluation. At the State Hospital, Dr. Joseph Belanger and Dr. Rosalie Etherington, both psychologists, evaluated D.V.A. to determine whether he is a sexually dangerous individual. At the commitment hearing, both psychologists testified D.V.A. is a sexually dangerous individual and likely to re-offend if not committed. The doctors, who were the only witnesses at the commitment hearing, each testified that D.V.A. suffers from pedophilia with sexual attraction to both males and females, sexual sadism, and antisocial personality disorder.

[¶ 4] Dr. Belanger reviewed D.V.A.'s legal files, clinical files, and treatment records and conducted four interviews with D.V.A. He testified regarding three risk assessment inventories. According to Dr. Belanger, D.V.A. scored 5 on the Rapid Risk Assessment for Sex Offense Recidivism (RRASOR), which indicates a 73% chance of re-offending within ten years and is considered "high." The second instrument used was the Static–99. D.V.A. scored 9 on this test which indicates a greater than 52% chance of re-offending within 15 years. Dr. Belanger testified this sample was a "very conservative method" because it focuses on re-conviction rather than re-arrest. The third inventory Dr. Belanger used was the Minnesota Sex Offense Screening Test, Revised (MnSOST–R). D.V.A. scored plus 20 on this test. This places him in the "very highest risk category" and indicates a 78% chance of re-offending within six years. On a psychological test, the PCL–R, D.V.A. scored 34, which is a "verbal descriptor of … psychopath, and that puts him at 99 percentile among male forensic patients." Dr. Belanger stated, "[D.V.A.] is unique in that he is high across the board" on all the tests. He concluded, "It is my best professional judgment that it may be so concluded to a reasonable degree of professional certainty that the respondent is, indeed, likely to engage in additional acts of sexual predatory conduct, per virtue of mental disorder and personality disorder."

[¶ 5] In preparing her evaluation of D.V.A., Dr. Etherington relied on penitentiary records, treatment records, psychological reports, State Hospital records, conversations with a psychologist at the North Dakota State Penitentiary, and four interviews with D.V.A. Dr. Etherington also testified regarding the risk assessment inventories and concluded "the scores on these instruments all indicate he is at high risk for reoffense and therefore is likely to engage in future predatory conduct." She testified that she and Dr. Belanger conducted the scoring on the inventories independently.

[¶ 6] The district court found D.V.A. was shown to have engaged in sexually predatory conduct and has a congenital or acquired condition that is manifested by a sexual disorder, personality disorder, or other mental disorder or dysfunction that makes him likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others. The court ordered D.V.A. committed to the custody of the executive director of the Department of Human Services until he is safe to be at large and has received the maximum benefit of treatment.

## II

[¶ 7] Chapter 25–03.3, N.D.C.C., governs commitment of sexually dangerous individuals. Our standard of review for appeals from commitments of sexually dangerous individuals under N.D.C.C. ch. 25–03.3 is "a modified clearly erroneous" standard. *In the Interest of M.B.K.*, 2002 ND 25, ¶ 9, 639 N.W.2d 473. "[W]e affirm a trial court's order of committal 'unless it is induced by an erroneous view of the law or if we are firmly convinced it is not supported by clear and convincing evidence.' " *Id.* (quoting *In the Interest of M.D.*, 1999 ND 160, ¶ 34, 598 N.W.2d 799).

[¶ 8] A sexually dangerous individual is

an individual who is shown to have engaged in sexually predatory conduct and who has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others. It is a rebuttable presumption that sexually predatory conduct creates a danger to the physical or mental

health or safety of the victim of the conduct.

N.D.C.C. § 25–03.3–01(8). The State must establish an individual is sexually dangerous by clear and convincing evidence, and

[a]n individual may not be committed unless evidence is admitted establishing that at least two experts have concluded the individual has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that makes that individual likely to engage in further acts of sexually predatory conduct.

N.D.C.C. § 25–03.3–13. A person is likely to engage in further acts of sexually predatory conduct when the person's propensity towards sexual violence is of such a degree as to pose a threat to others. *M.B.K.*, 2002 ND 25, ¶ 18, 639 N.W.2d 473.

### A.

[¶ 9] D.V.A. claims the psychologists' opinions were based upon inadmissible hearsay, and therefore, should not have been used to deprive him of his liberty. Dr. Belanger and Dr. Etherington reviewed records related to D.V.A. and conducted interviews with him. Section 25–03.3–13 provides that "[a]t the commitment proceeding, any testimony and reports of an expert who conducted an examination are admissible, including risk assessment evaluations." Additionally, both experts testified that the information relied upon in their evaluations was generally relied upon by experts in psychology to determine whether a person is a sexually dangerous individual. Rule 703, N.D.R.Ev., provides

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type

reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. D.V.A. did not produce any evidence indicating the information relied upon by Dr. Belanger and Dr. Etherington was not reasonably relied upon by psychologists in determining whether an individual is sexually dangerous. Further, we have held "the weakness or non-existence of a basis for an expert's opinion goes to his credibility, and not necessarily to the admissibility of the opinion evidence." *Victory Park Apts. v. Axelson,* 367 N.W.2d 155, 163 (N.D.1985); *see also* Explanatory Note, N.D.R.Ev. 703. Therefore, we conclude it was not error for the trial court to rely on Dr. Belanger's and Dr. Etherington's testimony regarding whether D.V.A. was a sexually dangerous individual.

## B.

[¶ 10] D.V.A. argues the State did not meet its burden of proof because no evidence was offered to show he did not suffer from mental retardation. D.V.A. misapplies the burden placed on the State by chapter 25–03.3, N.D.C.C. Chapter 25–03.3 does not require the State to establish the respondent is not mentally retarded, and it does not prohibit a person with mental retardation from being committed as a sexually dangerous individual. *See, e.g.,* N.D.C.C. § 25–03.3–08(2) (requiring the state's attorney to notify the court in the petition if she believes the respondent is an individual with mental retardation so the court may appoint a guardian ad litem for the respondent). Rather, mental retardation itself cannot be the sexual disorder, personality disorder, or other mental disorder or dysfunction that allows a person to be considered sexually dangerous. N.D.C.C. § 25–03.3–01(8). The State did not have a burden to establish D.V.A. does not suffer from mental retardation, it was

only required to comply with certain procedures if it knew or believed D.V.A. was an individual with mental retardation. The mere fact that Dr. Etherington referred to D.V.A. as "low functioning" does not indicate D.V.A. possibly suffered from mental retardation, and there is no other evidence indicating D.V.A. is an individual with mental retardation.

[¶ 11] Both psychologists diagnosed D.V.A. with pedophilia, sexual sadism, and antisocial personality disorder. These diagnoses indicate D.V.A. has "a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction" other than mental retardation, which "makes [him] likely to engage in further acts of sexually predatory conduct which constitutes a danger to the physical or mental health or safety of others." N.D.C.C. § 25–03.3–01(8). After reviewing the record, it is clear mental retardation was not the basis for the psychologists' opinion that D.V.A. is a sexually dangerous individual.

[¶ 12] The trial court was not induced by an erroneous view of the law and there was clear and convincing evidence that D.V.A. is a sexually dangerous individual. We affirm.

[¶ 13] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.