708 N.W.2d 877 (2006)
2006 ND 22
In the Interest of B.V.
Cynthia M. Feland, Petitioner and Appellee
v.
B.V., Respondent and Appellant.
No. 20050300.
Supreme Court of North Dakota.
January 31, 2006.
*880 Cynthia M. Feland, Assistant State's Attorney, Bismarck, ND, for petitioner and appellee.
Kent M. Morrow, Bismarck, ND, for respondent and appellant.
VANDE WALLE, Chief Justice.
[¶ 1] B.V. appealed a district court order finding B.V. is a sexually dangerous individual as defined in N.D.C.C. § 25-03.3-01(8) and committing B.V. to the care, custody, and control of the Executive Director of the Department of Human Services until the Executive Director determines B.V. is safe to be at large and has received the maximum benefit of treatment. We affirm.

I
[¶ 2] On October 27, 2004, the Burleigh County State's Attorney's Office filed a Petition for Commitment of a Sexually Dangerous Person under N.D.C.C. ch. 25-03.3, seeking to commit B.V. as a sexually dangerous person. The petition for commitment was based upon B.V.'s convictions for gross sexual imposition involving a victim who was unaware that a sexual act was being committed upon him, gross sexual imposition involving a two to three-year-old female child, indecent exposure in front of children, a lewd act involving a six to seven-year-old female child, and indecent exposure in a public phone booth. A preliminary hearing on the State's petition was held on November 1, 2004 with the district court ordering an evaluation of B.V. at the North Dakota State Hospital. On December 2, 2005, Joseph Belanger, Ph.D., filed a psychological evaluation of B.V.
[¶ 3] In a letter dated December 9, 2004, B.V., through his attorney, requested the appointment of an independent evaluator. B.V.'s request was granted. In a second letter dated December 9, 2004, B.V., through his attorney, requested that the district court wait on his request for an independent evaluator until after Dr. Etherington's report was received. Dr. Etherington's report was received later that same day.
[¶ 4] Both Dr. Belanger and Dr. Etherington found B.V. suffers from four conditions that are relevant to the determination of his likelihood of re-offending. Both reports listed the following four conditions: pedophilia, sexually attracted to females, non-exclusive type; paraphilia, not otherwise specified, polymorphous, including nonconsenting persons, exhibitionism, and voyeurism; personality disorder, not otherwise specified, with antisocial and borderline traits; and alcohol dependence with physiological dependence, in a controlled environment. Both reports concluded B.V. is an individual with a number of mental disorders or a congenital or acquired condition that makes him likely to engage in future acts of sexually predatory conduct.
[¶ 5] In a letter dated December 14, 2005, B.V.'s attorney informed the district court that B.V. now wanted to have an independent evaluation. At the same time, B.V. requested that the commitment hearing, scheduled for December 16, 2005, be continued. B.V.'s requests were granted and the commitment hearing was rescheduled for February 9, 2005.
[¶ 6] On January 20, 2005, B.V.'s attorney requested another continuance of the commitment hearing stating B.V. had been unable to find an independent evaluator. The district court granted B.V.'s request for continuance on January 24, 2005.
[¶ 7] On January 27, 2005, at B.V.'s request, the district court appointed Dr. Cynthia Brooks to perform the independent *881 evaluation. In a letter dated February 4, 2005, B.V.'s attorney informed the district court B.V. did not want a female evaluator and would refuse to cooperate with Dr. Brooks. On March 3, 2005, B.V.'s attorney sent the district court a proposed amended order appointing Dr. M.C. Brown to perform the evaluation and the district court signed an amended order appointing Dr. Brown.
[¶ 8] On April 27, 2005, B.V.'s attorney sent the district court a second amended order requesting the appointment of Dr. Peter C. Peterson to perform the evaluation. B.V.'s request contained no reason for his request to change evaluators again. On April 28, 2005, the district court signed a second amended order appointing Dr. Peterson to perform the evaluation.
[¶ 9] On June 2, 2005, B.V.'s attorney requested another change of the independent evaluator. B.V. sought to replace Dr. Peterson with Stacy Benson. The State responded to this request arguing B.V. was now requesting the appointment of a fourth independent evaluator without giving a justification for the request. The State also pointed out Stacy Benson was apparently female and B.V.'s reason for having the first appointed independent evaluator removed was because the first appointed independent evaluator was female. The State argued B.V. appeared to be stalling and no further appointments should be made. The district court stated it was apparent B.V. was attempting to delay resolution of the matter as long as possible and did not approve this requested change in evaluators. The district court stated Dr. Peterson would complete the independent evaluation.
[¶ 10] On June 15, 2005, B.V.'s attorney sent a letter to the district court stating B.V. was refusing to meet with Dr. Peterson. On June 16, the State notified the district court and B.V.'s attorney that the Burleigh County Sheriff's Department attempted to transport B.V. to his appointment with Dr. Peterson but B.V. refused to go and was not transported to his appointment. The district court notified B.V.'s attorney N.D.C.C. § 25-03.3-12 did not give B.V. the right to an independent evaluation by an expert of his choice and the district court made multiple attempts to accede to B.V.'s requests but no further modifications would be made. No independent evaluation was conducted.
[¶ 11] On August 4, 2005, B.V. filed a motion to dismiss the case stating the commitment hearing had not been held within 60 days after the preliminary hearing as required by N.D.C.C. § 25-03.3-13. The State responded to this motion arguing the delay in scheduling the hearing was due solely to B.V.'s actions, most specifically B.V.'s multiple requests for different independent evaluators. The district court denied this motion.
[¶ 12] On August 11, 2005, B.V.'s attorney filed a motion to continue his August 22, 2005 commitment hearing stating medical reasons were giving B.V. concern about his ability to concentrate and participate in the treatment hearing. The district court judge responded to the motion stating the only way he would grant the continuance was if a doctor provided information indicating a continuance was medically necessary. The judge also stated he was willing to hold the commitment hearing in Jamestown if travel was difficult for B.V.
[¶ 13] B.V.'s commitment hearing was held on August 22, 2005. The district court found B.V. to be a sexually dangerous individual as defined in N.D.C.C. ch. 25-03.3. The district court ordered B.V. committed to the care, custody, and control of the Executive Director of the Department of Human Services until, in the opinion of the Executive Director, B.V. is safe to be at large and has received the *882 maximum benefit of treatment. The district court further granted the Executive Director the authority to place B.V. in an appropriate treatment facility or program at which treatment is available. The district court also ordered B.V. to have an examination of his mental condition at least once a year and to provide the report of his examination to the district court.

II
[¶ 14] B.V. argues the district court erred when it determined there was clear and convincing evidence B.V. is a sexually dangerous individual likely to engage in further acts of sexually predatory conduct. "Our standard of review for appeals from commitments of sexually dangerous individuals under N.D.C.C. ch. 25-03.3 is `a modified clearly erroneous' standard." Interest of D.V.A., 2004 ND 57, ¶ 7, 676 N.W.2d 776. We affirm a district court's order of commitment unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence. Id. The "State must produce two experts to independently establish two elements: (1) that the respondent has some sort of disorder and (2) that disorder makes him or her `likely to engage in further acts of sexually predatory conduct.'" Interest of M.B.K., 2002 ND 25, ¶ 11, 639 N.W.2d 473. The phrase "'likely to engage in further acts of sexually predatory conduct' as used in N.D.C.C. § 25-03.3-13 means that the respondent's propensity towards sexual violence is of such a degree as to pose a threat to others." Id. at ¶ 18. "This definition prevents a contest over percentage points and the results of other actuarial tools, and allows experts to use the fullness of their education, experience and resources available to them in order to determine if an individual poses a threat to society." Id.
[¶ 15] At B.V.'s commitment hearing, the State produced two experts who established B.V. has a disorder or multiple disorders which make him likely to engage in further acts of sexually predatory conduct. There was ample evidence supporting the conclusion that B.V. suffers from a disorder which makes it likely he will engage in sexually predatory conduct in the future and the district court's order was not induced by an erroneous view of the law. The district court's findings were supported by clear and convincing evidence.

III
[¶ 16] B.V. argues the district court erred when it found factors surrounding B.V.'s termination from a sexual offender treatment program at the North Dakota State Penitentiary were not relevant at the commitment hearing. B.V. claims he had two witnesses at the commitment hearing who were going to testify about the circumstances surrounding B.V.'s prior participation in sexual offender treatment programs. At the commitment hearing, B.V.'s attorney asked Dr. Belanger a question regarding the difference between treatment options available at the State Hospital versus other community-based treatment programs. The district court judge asked B.V.'s attorney how that evidence was relevant to the determination required to be made at the commitment hearing. B.V.'s attorney responded it was his understanding under the statutory law that the district court had the ability to consider treatment options. The district court disagreed, stating the statute did not allow the district court to consider treatment options but rather allowed the district court only to commit the respondent into the care of the Department of Human Services and the department had the responsibility to consider treatment options. N.D.C.C. § 25-03.3-13. Therefore, the evidence regarding treatment options was *883 not admitted into evidence based on these questions. B.V.'s attorney did not object to the district court's determination but later made an offer of proof regarding the planned testimony of the two potential witnesses who were not called.
[¶ 17] "On appeal, we will not overturn a trial court's decision regarding the admission or exclusion of evidence on the ground of relevancy unless the trial court abused its discretion." State v. Haugen, 458 N.W.2d 288, 291 (N.D.1990). "A trial court abuses its discretion when it acts in an arbitrary, unconscionable, or unreasonable manner." Id. We agree with the district court's determination that N.D.C.C. § 25-03.3-13 does not allow the district court to consider or determine treatment options, but rather places that determination with the Department of Human Services. The district court did not act in an arbitrary, unconscionable, or unreasonable manner by not admitting evidence relating to sexual offender treatment programs.

IV
[¶ 18] B.V. argues he had the right to choose his own independent evaluator and the district court erred by not conducting the commitment hearing within the statutorily required sixty-day period following the preliminary hearing. Section 25-03.3-10, N.D.C.C., provides where a respondent is indigent, the district court will appoint a qualified expert for the respondent. The statute does not give an indigent respondent the right to choose the independent evaluator. Id. Here, the district court was more than indulgent in allowing B.V. to reject the appointment of two independent evaluators, each time appointing a new independent evaluator. The district court did not err when it denied B.V.'s request for a fourth independent evaluator.
[¶ 19] Section 25-03.3-13, N.D.C.C., provides that the commitment proceeding to determine whether the respondent is a sexually dangerous individual must be conducted within sixty days after the finding of probable cause. The statute allows the sixty-day time period to be extended for good cause. Id. B.V. has no plausible argument to say the delay in holding the commitment proceeding violated his rights in any way. See Holen v. N.D. Workers Comp. Bureau, 2000 ND 145, ¶ 9, 615 N.W.2d 141 (holding that to recover for delay in administrative proceedings, a claimant must show she was substantially prejudiced by the delay). The delays in holding the commitment hearing were caused by B.V.'s continual requests to change the independent evaluator and a later request to delay the hearing for medical reasons. Each time B.V. requested a change in the independent evaluator, he also requested to delay the hearing. The district court did not err by not holding the commitment hearing within sixty days.

V
[¶ 20] Finally, B.V. argues the district court erred by not appointing new counsel or allowing B.V. to represent himself at the commitment hearing. On June 24, 2005, B.V. sent a letter to the district court asking for a new attorney. In his letter, B.V. asked the district court how he could make a request to represent himself if a new attorney was not appointed.
[¶ 21] "The right of an indigent to have counsel appointed does not translate into a right to have counsel of one's own choosing, and a trial court has no duty to appoint specific counsel or to continually seek new counsel for capricious and difficult applicants." Owens v. State, 1998 ND 106, ¶ 24, 578 N.W.2d 542. *884 "[T]he matter of substitution of appointed counsel is committed to the sound discretion of the trial court and, absent a showing of good cause for the substitution, a refusal to substitute is not an abuse of discretion." Interest of J.B., 410 N.W.2d 530, 532 (N.D.1987). When examining the request for newly appointed counsel the trial court should look at the rights of the respondent while considering judicial economy. Id. "The court should inquire on the record into the reasons for the complaints about counsel." Id. The trial court should determine whether an irreconcilable conflict exists between counsel and respondent, whether new counsel would be confronted with the same conflict, the timing of the motion, the inconvenience to witnesses, the proclivity of the respondent to change counsel, and the quality of counsel. Id. at 533.
[¶ 22] B.V.'s letter requesting a change in counsel came after B.V.'s several successful attempts to continually delay the commitment hearing. The reasons for B.V.'s request, the lack of a showing of clear conflicts between B.V. and his counsel, the fact that new counsel would be subjected to the difficulties B.V. has shown throughout these proceedings, and the timing of the motion appearing to be another tactic of delay support the district court's decision not to grant B.V.'s request for new counsel. In this instance, the district court did not abuse its discretion by denying B.V.'s request to appoint new counsel.
[¶ 23] B.V. did not make an outright request to represent himself in his letter to the district court, nor did he make such a request at the time of the hearing. However, we acknowledged that "[w]hile the United States Supreme Court has not recognized a constitutional right to self-representation in civil cases, many courts have ruled a litigant in a civil case cannot be coerced into accepting appointed counsel rather than proceeding pro se." Owens v. State, 1998 ND 106, ¶ 24, 578 N.W.2d 542. Although we hold that a competent party in a civil case who wishes to represent himself cannot be coerced into accepting appointed counsel, here, B.V.'s letter to the district court was not a clear request to represent himself and it was within the district court's discretion to deny B.V.'s request for new counsel without further discussion as to self-representation.

VI
[¶ 24] We affirm the district court's order committing B.V. to the care, custody, and control of the Executive Director of the Department of Human Services until the Executive Director determines B.V. is safe to be at large and has received the maximum benefit of treatment.
[¶ 25] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.