2014 ND 88

**In the Interest of Ryan Ray CORMAN**

**Haley L. Wamstad, Assistant State's Attorney, Petitioner and Appellee**

v.

**Ryan Ray Corman, Respondent and Appellant.**

**No. 20130274.**

Supreme Court of North Dakota.

April 29, 2014.

Andrew C. Eyre, Assistant State's Attorney, Grand Forks County States Attorney's Office, Grand Forks, ND, for petitioner and appellee.

DeWayne A. Johnston, Grand Forks, ND, for respondent and appellant.

CROTHERS, Justice.

[¶ 1] Ray Corman appeals from a district court memorandum decision and order concluding Corman is a sexually dangerous individual and committing him to the care, custody and control of the executive director of the North Dakota Department of Human Services. We affirm.

I

[¶ 2] In December 1986, Corman pled guilty to felony battery in Indiana and was sentenced to five years incarceration, all suspended, and three years supervised probation. One month later, Corman was charged in Indiana with sexually molesting a ten-year-old boy during October 1986, when Corman was 27 years old. Corman pled guilty on March 18, 1987 and was sentenced to five years incarceration, four years suspended, and three years supervised probation. In 1988, Corman failed to comply with the terms of his probation and was ordered to serve the remainder of his sentences for both convictions.

[¶ 3] In June 2007, Corman was charged with and convicted of contributing to the delinquency of a minor, a Class A Misdemeanor, for providing a 15–year–old male with pornographic materials in 2006. As a condition of his sentence, Corman was required to register as a sex offender, was precluded from possessing children's pictures without permission from his probation officer and was required to complete sex offender treatment.

[¶ 4] Corman was terminated from sex offender treatment in September 2009 due, in part, to his deception and failure to participate. Corman's probation was revoked in October 2009 for, among other things, possessing sexually stimulating materials. The probationary search leading up to revocation found Corman in possession of numerous photos of young children and cartoon depictions of children engaging in sexual behavior. Corman's probation officer testified the materials could be used for sexual gratification and for grooming potential young victims. In August 2010, Corman was charged with and pled guilty to failing to register as a sex offender, a Class C Felony, and for failing to register changes in his employment status. Corman was sentenced to five years imprisonment, with two years suspended, and was again required to complete sex offender treatment. While in prison, Corman again refused to participate in treatment.

[¶ 5] In November 2011, nine months before Corman's scheduled release date, the North Dakota Department of Corrections conducted a pre-release sex offender staffing investigation, to determine whether to recommend the civil commitment of Corman as a sexually dangerous individual. At some point, Corman admitted to multiple incidents of sexual contact with five boys who were ages 9, 11, 13, 14 and 17, which occurred when Corman was age 19–21, or six to eight years before the 1987 sexual molestation conviction. After interviewing Corman and conducting several actuarial tests, the Department of Corrections concluded further review of Corman's case was not recommended, but recommended post-release sex offender treatment. Corman's probation officer disagreed with the staffing report and contacted the Grand Forks County State's Attorney's Office to recommend civil commitment for Corman.

[¶ 6] An amended petition for commitment was filed by the Grand Forks County State's Attorney. Dr. Greg Volk, a clinical psychologist who was appointed by the district court as an independent psychological evaluator, clinically interviewed Corman, reviewed his records and reviewed the results of several actuarial tests. The State's psychological evaluator, Dr. Lynne Sullivan, also reviewed Corman's records and actuarial test results, but did not clinically interview Corman because Corman refused to meet with her. A commitment hearing was held on April 10 and 11, 2013. Dr. Sullivan testified Corman met the criteria for paraphilia not otherwise specified, with pedophilic and hebephelic interests and narcissistic personality disorder with antisocial traits. She determined Corman is a sexually dangerous individual and recommended he be committed to the North Dakota State Hospital. Dr. Volk testified Corman has a personality disorder, not otherwise specified, with histrionic and narcissistic features. Dr. Volk agreed Corman needed sex offender treatment but opined Corman was not necessarily likely to engage in further acts of sexually predatory conduct. Dr. Volk also noted, "Corman's history is suggestive of long-standing problems associated with a high level of risk." Dr. Volk reported, "While his current offense does not involve [sexual] contact, his history indicates a propensity toward inappropriate sexual contact with minors that he has admitted in a polygraph assessment." Following the commitment hearing, the district court found Corman is a sexually dangerous individual and committed him to the care, custody and control of the executive director of the North Dakota Department of Human Services.

II

[¶ 7] Corman appeals the district court order civilly committing him as

a sexually dangerous individual. This Court reviews " 'civil commitments of sexually dangerous individuals under a modified clearly erroneous standard.' " *Interest of Johnson*, 2013 ND 146, ¶ 5, 835 N.W.2d 806 (quoting *In re Rubey*, 2011 ND 165, ¶ 5, 801 N.W.2d 702). Under this standard, this Court will affirm a district court order " 'unless it is induced by an erroneous view of the law or we are firmly convinced the order is not supported by clear and convincing evidence.' " *Id.* This Court has defined clear and convincing evidence as "evidence which leads to a firm belief or conviction that the allegations are true." *Zander v. Workforce Safety & Ins.*, 2003 ND 194, ¶ 11, 672 N.W.2d 668. This Court reviews whether it was clearly erroneous for the district court to find clear and convincing evidence established the individual remained a sexually dangerous individual, rather than whether we think clear and convincing evidence supports the individual's continued commitment. *See Matter of Wolff*, 2011 ND 76, ¶ 14, 796 N.W.2d 644 (concluding that because a choice between two permissible views of the weight of the evidence is not clearly erroneous, the district court's finding the individual remained a sexually dangerous individual was not clearly erroneous); *Matter of Vantreece*, 2009 ND 152, ¶ 18, 771 N.W.2d 585 (concluding under the modified clearly erroneous standard that this Court was not convinced the district court order was not supported by clear and convincing evidence); *Zundel v. Zundel*, 278 N.W.2d 123, 130 (N.D.1979) (holding this Court does not determine whether clear and convincing evidence exists because this Court will not substitute its judgment for that of the district court; rather, this Court asks whether the record contains substantial evidence capable of sustaining the district court's decision under its clear and convincing burden).

[¶ 8] The State has the burden of proving a person is a sexually dangerous individual by clear and convincing evidence. *Interest of Johnson*, 2013 ND 146, ¶ 5, 835 N.W.2d 806. A person may not be committed as a sexually dangerous individual unless the State proves:

"(1) the individual has engaged in sexually predatory conduct; (2) the individual has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction; (3) the condition makes the individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others; and (4) the individual has serious difficulty controlling his behavior."

*Matter of Mangelsen*, 2014 ND 31, ¶ 7, 843 N.W.2d 8 (citations omitted); *see also* N.D.C.C. § 25–03.3–01(8); N.D.C.C. § 25–03.3–13.

[¶ 9] The district court in this case held:

"Based upon the totality of the testimony and documentation produced during hearing, the court adopts the clinical finding of Dr. Lynne Sullivan, as set forth with more specificity in Petitioner Exhibit 54. Mr. Corman suffers from a clinical diagnosis of Paraphilia and a Narcissistic Personality Disorder with Antisocial Traits, both of which make him likely to engage in further acts of sexually predatory conduct, if released at this time.

"While the admissions made by the Respondent during a polygraph exam [included within the Addendum to Respondent Exhibit 60] support the allegation of a pattern of predatory sexual misconduct, the trial court did not consider those admissions as pivotal in reaching its ultimate determination in

this case. Nor did it rely entirely upon the results of the actuarial testing results admitted during hearing. Rather, while considering such admissions and results, it was the other documented repetitious history of sexual misconduct in the form of criminal convictions, Mr. Corman's other admissions, the concurring expert opinions as to the need for sex offender treatment (although they differed as to exactly what is appropriate), the ND DOCR risk assessment included within the Addendum of the November 2010 Pre–Sentence Investigation Report, the repeated failures of Mr. Corman to adhere to probationary terms requiring no contact with minor children or possession of sexually stimulating materials, as well as his narcissistic attitudes and behaviors, and his continued denial or excuses for most of his past sexual misconduct, that has led to the court's conclusions as set forth below."

### III

[¶ 10] It is undisputed that Corman has engaged in sexually predatory conduct, which satisfies the first element of the commitment statute. Corman was convicted of sexual molestation in 1987. That conduct meets the statutory definition of sexually predatory conduct. Corman also self-reported sexual conduct that occurred when Corman was age 19–21, or six to eight years before the sexual molestation conviction, and which involved oral sex and masturbating boys ages 9, 11, 13, 14 and 17. This conduct also meets the statutory definition of sexually predatory conduct, and although there was dispute as to its admissibility, it was relied on by the experts and by the district court.

### IV

[¶ 11] Corman argues the district court order is not supported by clear and con-

vincing evidence that Corman has a congenital or acquired condition that is manifested by a sexual disorder. The district court found "Mr. Corman suffers from a clinical diagnosis of Paraphilia and a Narcissistic Personality Disorder with Antisocial Traits...." The district court adopted Dr. Sullivan's findings, as stated in her report. Dr. Sullivan categorizes Corman's diagnoses as "Paraphilia Not Otherwise Specified (Pedophilia, Hebephilia)" and "Narcissistic Personality Disorder with Antisocial Traits."

### A

[¶ 12] Corman argues that hebephilia is not a mental disorder and will not be included in the DSM–5. Although the Diagnostic and Statistical Manual of Mental Disorders ("DSM") is commonly utilized in determining whether a person meets the definition of a sexually dangerous individual, a mental disorder or defect need not be listed in the DSM to meet the statutory requirement that the individual "has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction." *See Matter of A.M.*, 2010 ND 163, ¶¶ 13, 15–19, 787 N.W.2d 752. This Court has upheld a diagnosis of paraphilia not otherwise specified hebephilia, when supported by clear and convincing evidence. *See Interest of Johnson*, 2013 ND 146, ¶¶ 3, 6–8, 835 N.W.2d 806; *Matter of G.R.H.*, 2008 ND 222, ¶¶ 8–11, 758 N.W.2d 719.

[¶ 13] Corman was diagnosed with Paraphilia Not Otherwise Specified (Pedophilia, Hebephilia). Corman does not challenge the pedophilia diagnosis. In her report, Dr. Sullivan stated:

"According to the *DSM–IV–TR*, the essential features of a Paraphilia are 'recurrent, intense sexually arousing fantasies, sexual urges, or behaviors

generally involving 1) nonhuman objects, 2) the suffering or humiliation of oneself or one's partner, or 3) children or other nonconsenting persons that occur over a period of at least 6 months' (p. 566). . . . The *DSM–IV–TR* lists Paraphilia Not Otherwise Specified as a diagnostic category for 'Paraphilias that do not meet criteria for any of the other specific categories. Examples include, but are not limited to, telephone scatologia (obscene phone calls), necrophilia (corpses), partialism (exclusive focus on part of the body), zoophilia (animals), coprophilia (feces), klismaphilia (enemas), and urophilia (urine)' (p. 576). Not listed in the *DSM–IV–TR* is Paraphilia Not Otherwise Specified, Hebephilia, which is sexual attraction to pubertal children, generally aged 11 or 12 to 14."

[¶ 14] Regarding hebephilia, the record establishes that from age 19–27 Corman engaged in a pattern of sexual contact involving boys ages 9–17. In 2007 and 2009, Corman was found to be in possession of photographs and cartoons of minor males, and his 2008 conviction was for providing pornographic materials to a 15–year–old male he befriended. Testing conducted while Corman was in sex offender treatment revealed his sexual interests were primarily toward adolescent males and females. Evidence exists upon which the district court could find Corman had a congenital or acquired condition that is manifested by a sexual disorder.

### B

[¶ 15] Corman also argues Dr. Sullivan's diagnosis of narcissistic personality disorder with antisocial traits was not properly made. Corman alleges Dr. Sullivan could not have determined Corman's conduct persisted across a broad range of situations because of the limited documentation she relied on. Corman alleges statements made by him and relied on by Dr. Sullivan in her diagnosis were taken out of context. Corman alleges both experts failed to confirm Corman's conduct was not due to head trauma. Corman alleges his personality traits do not rise to the level of a disorder. Finally, Corman alleges Dr. Sullivan's failure to meet with him personally undermined her diagnosis.

[¶ 16] Corman's argument can be summarized as a request for this Court to reweigh the evidence and find in Corman's favor. However, this Court does not reweigh expert testimony in sexually dangerous individual proceedings. *Matter of Mangelsen*, 2014 ND 31, ¶ 8, 843 N.W.2d 8. "A choice between two permissible views of the weight of the evidence is not clearly erroneous." *Id.* Here, a factual basis exists for Dr. Sullivan's diagnosis of narcissistic personality disorder with antisocial traits and the district court did not err in relying on Dr. Sullivan's diagnosis.

### V

[¶ 17] Corman argues the district court order was not supported by clear and convincing evidence that his mental disorder made him likely to engage in further acts of sexually predatory conduct. The phrase "likely to engage in further acts of sexually predatory conduct" references the individual's propensity to pose a threat to others in the future. *Cf. In re M.B.K.*, 2002 ND 25, ¶ 18, 639 N.W.2d 473 (The *In re M.B.K.* decision has been often cited for the proposition that, in addition to the individual's propensity to pose a threat to others in the future, "sexually predatory conduct" means a propensity towards sexual violence. *E.g., In re J.T.N.*, 2011 ND 231, ¶ 9, 807 N.W.2d 570; *In re A.M.*, 2009 ND 104, ¶ 8, 766 N.W.2d 437; *In re E.W.F.*, 2008 ND 130, ¶ 10, 751 N.W.2d 686; *In re B.V.*, 2006 ND 22, ¶ 14, 708 N.W.2d 877;

*In re D.V.A.*, 2004 ND 57, ¶ 8, 676 N.W.2d 776. Reference to violence is purposely excluded because use of that phrase in *In re M.B.K.* would appear to add an element not required by the statute defining sexually predatory conduct.). Although actuarial tests are considered when determining whether an individual poses a risk of engaging in future acts of sexually predatory conduct, the district court recognized:

"When utilizing any actuarial tests in civil commitment proceedings, it must be recognized that while actuarial data can be used to identify a group of persons to be considered for possible civil commitment, these tests cannot yet accurately predict the likelihood of future acts of sexual violence with respect to any specific individual within such a group. Actuarial scores are not substitutes for judicial decision-making or review. *See, e.g., Interest of P.F.*, 2006 ND 82, ¶ 29, 712 N.W.2d 610. Instead, their proper function in the civil commitment proceedings should be considered one factor to be weighed in determining whether an individual is likely to engage in further acts of sexually predatory conduct. *See Matter of Anderson*, 2007 ND 50, ¶ 54, 730 N.W.2d 5[7]0. (Kapsner, J., dissenting). This court remains in agreement with Justice Kapsner that actuarial testing results cannot and should not replace independent judicial decision-making and review. *Id.* at ¶ 56. *See also Matter of Midgett*, 2007 ND 198, ¶ 17, 742 N.W.2d 803. It is a judicial decision, not a psychological function, to decide whether measuring a statistical likelihood to sexually re-offend over a lifetime is clear and convincing evidence to justify the deprivation of an individual's liberty. *Anderson* at ¶ 66. The court has the ultimate decision to determine whether the State has met its burden of producing clear and convincing evidence sufficient for commitment.

A certain test score on the RRASOR or Static–99 does not make an individual automatically committable. If such were the case, the judiciary would be without purpose [in these matters]. *Id.* at ¶ 68."

[¶ 18] The district court adopted the clinical findings in Dr. Sullivan's report. With respect to Corman's likelihood of engaging in further acts of sexually predatory conduct, Dr. Sullivan's report stated:

"Mr. Corman has been diagnosed with Paraphilia NOS (Pedophilia, Hebephilia) and Narcissistic Personality Disorder with Antisocial Traits. These disorders create initial reason to believe he will have serious difficulty controlling his behavior and may be likely to engage in further acts of sexually predatory conduct. The results of the risk assessment instruments indicate he poses a High risk of future sexually offensive behavior over a period of 6 to 10 years. Mr. Corman has not participated adequately in sex offender treatment, and he was unmanageable on probation in the community most recently. I believe he will likely experience serious difficulty controlling his behavior if released to the community at this time, even with intensive supervision.

"Given the reasoning detailed above, it may be concluded to a reasonable degree of scientific certainty Mr. Corman is likely to engage in further acts of sexually predatory conduct by virtue of mental disorder and personality disorder. According to statute, Mr. Corman has been convicted of two separate counts of sexually predatory conduct (i.e., Child Molestation in 1986; Contributing to the Delinquency of a Minor in 2007). Therefore, it may be further concluded that Mr. Corman is a Sexually Dangerous Individual as defined in NDCC."

[¶ 19] Corman's independent expert also opined on Corman's history with young males, stating:

"Mr. Corman denies the offense and therefore behavioral analysis is made on historical information. It appears that he has a notable history of maintaining contact with younger males in particular and an extensive history of sexual contacts with them. As he has noted himself, any contact with minors might be construed as 'grooming' behavior in looking at his history. Grooming, of course, tends to be based on his intent and his history does indeed suggest that he has used his proximity to youth as a means of obtaining sexual gratification. He has not successfully completed a sex offender treatment program and therefore it is a valid concern that any contact he has with youth might be considered grooming."

[¶ 20] The expert's findings here are similar to those in *In re M.D.*, 1999 ND 160, 598 N.W.2d 799, where the Court affirmed a finding the respondent was a sexually dangerous individual. There the Court stated:

"The record includes ample evidence supporting a conclusion M.D. suffers from a sexual, mental, or personality disorder which makes it likely he will engage in further sexually predatory conduct. M.D. has three times failed to complete a sexual offender treatment program. Details were presented about his 1993 conviction, demonstrating he would groom his young victims through a pattern of coercion and manipulation. The evidence from the search of M.D.'s apartment showed he was befriending young boys in violation of the terms of his probation, and that he maintained a list of names of teen-aged boys, as well as the name and telephone number of a prior victim. M.D. patronized the adult bookstore accompanied by teen-aged boys, and procured gay male materials, condoms, and handcuffs. M.D. also admitted to his probation officer he would sometimes procure alcohol for these teen-aged boys. All of this evidence supports an inference M.D. was again engaging in 'grooming' conduct, and clearly demonstrates he was not deterred from such conduct by the threat of revocation of his probation."

*In re M.D.*, at ¶ 37.

[¶ 21] Based on the evidence and our precedent, the district court did not clearly err in finding Corman's mental disorder made him likely to engage in further acts of sexually predatory conduct.

## VI

[¶ 22] Corman argues the district court order was not supported by clear and convincing evidence that Corman has serious difficulty controlling his behavior. "The fourth element of the commitment standards evolved in response to substantive due process concerns, as expressed in *Kansas v. Crane*, 534 U.S. 407, 412–13, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), as a corollary to the third statutory-based element of the test." *Matter of Mangelsen*, 2014 ND 31, ¶ 10, 843 N.W.2d 8. This Court has "construed the definition of a sexually dangerous individual to require a nexus between the disorder and dangerousness, including evidence showing the individual has serious difficulty controlling his behavior...." *Interest of L.D.M.*, 2011 ND 25, ¶ 4, 793 N.W.2d 778 (citing *Interest of Maedche*, 2010 ND 171, ¶ 10, 788 N.W.2d 331). "This additional consideration is necessary to distinguish a sexually dangerous individual from the 'dangerous but typical recidivist convicted in an ordinary criminal case.'" *Matter of E.W.F.*, 2008 ND 130, ¶ 10, 751 N.W.2d 686 (citations omitted). The evidence of-

fered to show serious difficulty controlling behavior does not necessarily have to be sexual in nature. *In re Wolff*, 2011 ND 76, ¶ 7, 796 N.W.2d 644.

[¶ 23] The district court found Corman needed inpatient sex offender treatment to minimize his risk of re-offending following release. That conclusion was preceded by findings that Corman had a "documented repetitious history of sexual misconduct in the form of criminal convictions." Corman refused to participate in sex offender treatment while incarcerated. The district court also found significant "the repeated failures of Mr. Corman to adhere to probationary terms requiring no contact with minor children or possession of sexually stimulating materials, as well as his narcissistic attitudes and behaviors, and his continued denial or excuses for most of his past sexual misconduct."

[¶ 24] Evidence exists of Corman's long-term predatory conduct, his lack of treatment, the long-term possession of child pornography, persistent efforts to develop relationships with children and an inability to abide by his terms of probation. Therefore, the district court did not err in finding Corman has serious difficulty controlling his behavior.

### VII

[¶ 25] The district court's finding that Corman is a sexually dangerous individual was supported by clear and convincing evidence and was not clearly erroneous. We affirm the district court memorandum decision and order committing Corman to the care, custody and control of the executive director of the North Dakota Department of Human Services.

[¶ 26] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, S.J. and LISA FAIR McEVERS, J., concur.

[¶ 27] The Honorable WILLIAM A. NEUMANN, S.J., sitting in place of SANDSTROM, J., disqualified.

KAPSNER, Justice, dissenting.

[¶ 28] I respectfully dissent from Parts V and VI of the majority opinion.

### I

[¶ 29] While it is undisputed Corman has engaged in sexually predatory conduct, which satisfies the first element of the commitment standards, I believe an understanding of Corman's sexually predatory conduct is germane to this case. Sexually predatory conduct is defined by statute as:

a. Engaging or attempting to engage in a sexual act or sexual contact with another individual, or causing or attempting to cause another individual to engage in a sexual act or sexual contact, if:

(1) The victim is compelled to submit by force or by threat of imminent death, serious bodily injury, or kidnapping directed toward the victim or any human being, or the victim is compelled to submit by any threat or coercion that would render a person reasonably incapable of resisting;

(2) The victim's power to appraise or control the victim's conduct has been substantially impaired by the administration or employment, without the victim's knowledge, of intoxicants or other means for purposes of preventing resistance;

(3) The actor knows or should have known that the victim is unaware that a sexual act is being committed upon the victim;

(4) The victim is less than fifteen years old;

(5) The actor knows or should have known that the victim has a disability that substantially impairs the victim's

understanding of the nature of the sexual act or contact;

(6) The victim is in official custody or detained in a treatment facility, health care facility, correctional facility, or other institution and is under the supervisory authority, disciplinary control, or care of the actor;

(7) The victim is a minor and the actor is an adult; or

(8) The other individual is a person related to the actor within a degree of consanguinity within which marriages are declared incestuous and void by section 14–03–03 and the actor knows that; or

b. Engaging in or attempting to engage in sexual contact with another individual or causing or attempting to cause another individual to have sexual contact, if:

(1) The actor knows or should have known that the contact is offensive to the victim; or

(2) The victim is a minor, fifteen years of age or older, and the actor is the minor's parent, guardian, or is otherwise responsible for general supervision of the victim's welfare.

N.D.C.C. § 25–03.3–01(9). "Sexual act" is defined as "sexual contact between human beings" and "sexual contact" is defined as "any touching of the sexual or other intimate parts of an individual for the purpose of arousing or satisfying sexual or aggressive desires." N.D.C.C. § 25–03.3–01(6) and (7).

[¶ 30] In this case, Corman was convicted for sexual molestation that took place in 1986. The conduct which was the basis for that conviction meets the statutory definition of sexually predatory conduct. Corman also self-reported sexual conduct which allegedly occurred when Corman was age 19–21, or six to eight years before the sexual molestation conviction, and which involved numerous boys ages 9–17. This conduct also meets the statutory definition of sexually predatory conduct.

[¶ 31] On the other hand, Corman's 2007 conviction of contributing to the delinquency of a minor does *not* qualify as sexually predatory conduct under the statutory scheme. The evidence supporting that charge was that Corman provided a 15–year–old male with pornographic materials. This behavior does not meet the statutory definition of sexually predatory conduct, and there is no evidence that any other behavior meeting the statutory definition of sexually predatory conduct occurred during this incident. Similarly, Corman's possession of photographs of children and sexually explicit cartoons does not qualify as sexually predatory conduct under the statute. As a result, the last sexually predatory conduct committed by Corman for purposes of analysis in this case occurred in 1986, 28 years ago.

II

[¶ 32] Corman argues the district court order was not supported by clear and convincing evidence that his mental disorder made him likely to engage in further acts of sexually predatory conduct. In this case, the district court adopted, carte blanche, the findings of Dr. Sullivan as expressed in her report. With respect to Corman's likelihood of engaging in further acts of sexually predatory conduct, Dr. Sullivan's report relied on Corman's diagnoses, the results of actuarial tests, which Dr. Sullivan admitted later she had misscored, and Corman's refusal to participate in sex offender treatment. Dr. Sullivan also noted, "the best predictor of future behavior is past behavior. Given that Mr. Corman has a history of engaging in sexual contact with multiple minor males, it is likely that his paraphilia in combination with his personality disorder will lead him

to engage in future acts of sexually predatory conduct."

[¶ 33] The majority, citing to information not included in Dr. Sullivan's report or relied on by the district court, likens this case to *In re M.D.*, 1999 ND 160, 598 N.W.2d 799, a case of first impression in which we affirmed a sexually dangerous individual determination for an individual who had violated the terms of his probation by engaging in a pattern of grooming which mirrored the facts of his original conviction. In that case, approximately one year after the end of his incarceration, M.D. was found with two minor boys in his apartment, a list of underage males, and contact information for his victim, all in violation of his probation. *Id.* at ¶¶ 2–5.

[¶ 34] In this case, on the other hand, Corman was apparently, based on the record available to the district court, unsupervised in the community for over twenty years, and there is no documentation of any further sexually predatory conduct. Although Corman has recently had some criminal violations, the third factor asks specifically whether Corman is likely to engage in further acts of *sexually predatory conduct*, not whether Corman is likely to engage in any type of criminal behavior.

[¶ 35] With respect to the extended period of absence of sexually dangerous behavior by Corman, Dr. Sullivan testified that it was not something that she would necessarily consider "positive," and that she would just set that type of information aside when evaluating Corman's risk for future acts of sexually predatory conduct. This is despite her insistence that "the best predictor of future behavior is past behavior." As the district court merely adopted the findings of Dr. Sullivan, it is clear that absolutely no weight was given to the more than twenty-five year period between 1986 and the present during

which there is no documented history of sexually predatory conduct by Corman.

[¶ 36] The majority's affirmance of the district court's findings regarding the third statutory commitment factor in this case suggests that, by simply meeting the first two factors, Corman is automatically likely to engage in further acts of sexually predatory conduct. Not only does this contradict the requirements this Court has set forth for evaluating the likelihood of re-engaging in sexually predatory conduct, but it renders the third factor of the statutory commitment analysis meaningless. Although this Court has a history of upholding a district court's findings in sexually dangerous individual commitment cases, we should not act as a mere rubber stamp. In light of the district court's blanket adoption of Dr. Sullivan's report and the total failure to consider the more than twenty-five year period between 1986 and the present during which there is no documented history of sexually predatory conduct by Corman, I believe the district court's finding that Corman is likely to engage in further acts of sexually predatory conduct was clearly erroneous.

### III

[¶ 37] Corman also argues the district court order was not supported by clear and convincing evidence that Corman has serious difficulty controlling his behavior. As the majority notes, this due process consideration was added in order to "distinguish a sexually dangerous individual from the dangerous but typical recidivist convicted in an ordinary criminal case." *Matter of E.W.F.*, 2008 ND 130, ¶ 10, 751 N.W.2d 686 (citation and quotation marks omitted). The United States Supreme Court has noted "the constitutional importance of distinguishing a dangerous sexual offender subject to civil commitment from other dangerous persons who are perhaps

more properly dealt with exclusively through criminal proceedings. That distinction is necessary lest civil commitment become a mechanism for retribution or general deterrence-functions properly those of criminal law, not civil commitment." *Kansas v. Crane*, 534 U.S. 407, 412, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002) (citations and quotation marks omitted).

[¶ 38] With respect to whether Corman has serious difficulty controlling his behavior, Dr. Sullivan's report stated:

> Mr. Corman has not adequately participated in any form of Intensive Sex Offender treatment, and as a result he has not learned treatment interventions that would effectively permit him to prevent further sexually offensive and illegal behavior. He proved himself to be unmanageable when on intensive sex offender supervision in the community most recently. For these reasons, it is the undersigned evaluator's professional opinion, to a reasonable degree of psychological certainty, that Mr. Corman will have serious difficulty controlling his sexual behavior if not committed to the State Hospital as a Sexually Dangerous Individual.

Dr. Sullivan does not indicate why a failure to complete treatment means that Corman, specifically, will have serious difficulty controlling his behavior. Again, Dr. Sullivan refused to even consider the fact that Corman has gone over twenty-five years without treatment and with no apparent difficulty in controlling his behavior.

[¶ 39] Corman was terminated from outpatient sex offender treatment due to his deception and failure to participate, and he refused to participate in sex offender treatment while in custody. Corman maintains he is innocent of the 2007 contributing to the delinquency of a minor charge, and Dr. Sullivan herself notes a correlation between Corman's view of the charge and Corman's refusal to participate in sex offender treatment. This behavior strikes me as the type common to "dangerous but typical recidivists." I do not condone Corman's decision to disregard the probationary conditions imposed on him by the district court. He certainly deserves the legal consequences associated with his decision to disobey a court order. However, I do not agree that civil commitment is the appropriate consequence for this type of willful misbehavior. If the due process consideration of the commitment standards is to have any meaning, it must be concluded that this type of behavior makes Corman the type of offender "more properly dealt with exclusively through criminal proceedings." *See Crane*, 534 U.S. at 412, 122 S.Ct. 867.

[¶ 40] Because the determination that Corman has serious difficulty controlling his behavior was based only on his refusal to complete sex offender treatment and because no consideration was given to the over twenty-five year period in which Corman apparently controlled his behavior, I am firmly convinced that the district court's finding that Corman has serious difficulty controlling his behavior was clearly erroneous.

[¶ 41] I respectfully dissent.

[¶ 42] CAROL RONNING KAPSNER