2010 ND 17

**In the Matter of Raymond J. VOISINE.**

**State of North Dakota, Plaintiff and Appellee**

v.

**Raymond J. Voisine, Defendant and Appellant.**

**No. 20090182.**

Supreme Court of North Dakota.

Jan. 26, 2010.

Jonathan R. Byers, Office of Attorney General, Bismarck, ND, for plaintiff and appellee.

Kent M. Morrow, Bismarck, ND, for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Raymond J. Voisine appeals the district court order finding him a sexually dangerous individual and committing him to the care, custody and control of the Department of Human Services. We reverse and remand, concluding the district court made a legal error by finding that incest between consenting adults falls within the statutory definition of sexually predatory conduct and by omitting findings related to the first and second prongs

of the analysis used to determine if Voisine is a sexually dangerous individual.

## I

[¶ 2] Voisine is a 65-year-old male with four adult children, R.V., P.P., H.M. and L.K. In 2003, an officer with the North Dakota Bureau of Criminal Investigation executed a search warrant on Voisine's home for an unrelated firearms charge. During the search, the officer found sexually explicit photographs under the pillow on Voisine's bed. The photographs pictured H.M., one of Voisine's three adult daughters. DNA analysis was performed and established with over 99.99 percent certainty that Voisine fathered two children with H.M.

[¶ 3] In light of Voisine's incestuous relations, interviews were conducted with his acquaintances. Voisine's grandson reported that when he was 6 or 7 years old, he was forced to stroke Voisine's penis for 5 to 10 minutes. The ex-husband of H.M. reported that Voisine threatened him with a firearm and fathered a child with P.P., Voisine's adult daughter. Voisine's ex-wife reported that Voisine beat and threatened her while they were married. The current boyfriend of Voisine's ex-wife reported that Voisine's children were sexually abused when they were minors. Voisine's daughter, L.K., reported that she was born to a 17–year–old mother who was impregnated by a 34–year–old Voisine. L.K. also reported that Voisine physically abused her when she was young and that she once walked in on Voisine unzipping his pants behind a naked and bent-over H.M. L.K. later denied stating H.M. was naked.

[¶ 4] Following the investigation, Voisine was charged with gross sexual imposition for sexual contact with his 6- or 7-year-old grandson and with promoting obscenity to a minor for allegedly showing pornography to a second, 9- or 10-year-old grandson who was also Voisine's son. Voisine pled guilty to gross sexual imposition, and the promotion of obscenity charge was dismissed. He was incarcerated, and upon his release in 2008, the State petitioned to commit him as a sexually dangerous individual. The State alleged that in addition to the sexual contact underlying Voisine's gross sexual imposition conviction, that Voisine sired three children with two of his daughters, that Voisine sexually abused his daughters as minors, that Voisine conceived a child with a 16-year-old girl in Maine and that Voisine promoted obscenity to a minor by showing pornography to his 9- or 10-year-old grandson/son.

[¶ 5] At his preliminary hearing, Voisine denied fathering two of H.M.'s children and denied having sexual contact with H.M. The district court found probable cause to detain Voisine, and a commitment hearing was set for May 29, 2009. Prior to the commitment hearing, Voisine was evaluated by Dr. Lynne Sullivan, a psychologist at the North Dakota State Hospital. Dr. Sullivan opined that Voisine's high level of psychopathy and sexual deviance make it highly likely he will engage in further sexually predatory conduct and that Voisine is a sexually dangerous individual. Voisine was also evaluated by Dr. Edward Kelly, a forensic psychiatrist from the University of Washington. Dr. Kelly opined Voisine's standard risk assessment scores indicate Voisine is not a sexually dangerous individual.

[¶ 6] The reports and testimony of Dr. Sullivan and Dr. Kelly were presented at Voisine's commitment hearing. Following the hearing, the district court ordered Voisine committed to the care, custody and control of the Department of Human Services. In the commitment order, the district court stated,

> "The Court finds that incest between a father and one or more of his daugh-

ters is sexually predatory conduct as it involves a gross breach of the duty a parent has to provide for the welfare of his children, a parent being in a position to influence or manipulate his children.

. . . .

"The fact that [Voisine] has committed incest with one or more of his daughters and has had sexual contact with one or more of his grandchildren/grandsons, and the fact he is support [sic] by his immediate family in this sexually predatory conduct causes the Court to find that [Voisine] has engaged in sexually predatory conduct and that it is a near certainty that he will once again engage in sexually predatory conduct without institutional treatment."

[¶ 7] Voisine timely filed this appeal.

## II

[¶ 8] Voisine argues the district court erred in committing him as a sexually dangerous individual. "This Court reviews civil commitments of sexually dangerous individuals under a modified clearly erroneous standard, and we will affirm the district court's decision unless the court's order is induced by an erroneous view of the law, or we are firmly convinced the order is not supported by clear and convincing evidence." *In re R.A.S.,* 2008 ND 185, ¶ 5, 756 N.W.2d 771.

## III

[¶ 9] On appeal, Voisine argues the district court erroneously applied the sexually dangerous individual analysis. Before an individual can be committed as a sexually dangerous individual, the State must show by clear and convincing evidence the individual has:

"[1] engaged in sexually predatory conduct and ... [2] has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder,

or other mental disorder or dysfunction that [3] makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others."

N.D.C.C. § 25–03.3–01(8); *see* § 25–03.3–13 (establishing clear and convincing burden of proof). In response to substantive due process concerns, a corollary to the third prong of the commitment standard has evolved. *In re E.W.F.,* 2008 ND 130, ¶ 10, 751 N.W.2d 686 (citing *Kansas v. Crane,* 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002)). This corollary requires the State to demonstrate the individual has serious difficulty controlling his behavior. *In re E.W.F.,* at ¶ 10.

[¶ 10] The term "sexually predatory conduct" is defined by statute:

"9. 'Sexually predatory conduct' means:

a. Engaging or attempting to engage in a sexual act or sexual contact with another individual, or causing or attempting to cause another individual to engage in a sexual act or sexual contact, if:

(1) The victim is compelled to submit by force or by threat of imminent death, serious bodily injury, or kidnapping directed toward the victim or any human being, or the victim is compelled to submit by any threat that would render an individual of reasonable firmness incapable of resisting;

(2) The victim's power to appraise or control the victim's conduct has been substantially impaired by the administration or employment, without the victim's knowledge, of intoxicants or other means for purposes of preventing resistance;

(3) The actor knows or should have known that the victim is unaware that a sexual act is being committed upon the victim;

(4) The victim is less than fifteen years old;

(5) The actor knows or should have known that the victim has a disability that substantially impairs the victim's understanding of the nature of the sexual act or contact;

(6) The victim is in official custody or detained in a treatment facility, health care facility, correctional facility, or other institution and is under the supervisory authority, disciplinary control, or care of the actor; or

(7) The victim is a minor and the actor is an adult; or

b. Engaging in or attempting to engage in sexual contact with another individual or causing or attempting to cause another individual to have sexual contact, if:

(1) The actor knows or should have known that the contact is offensive to the victim; or

(2) The victim is a minor, fifteen years of age or older, and the actor is the minor's parent, guardian, or is otherwise responsible for general supervision of the victim's welfare."

N.D.C.C. § 25–03.3–01(9). Though criminal and morally reprehensible, incest between consenting adults does not fall within the statutory definition of sexually predatory conduct, as conceded by the State at oral arguments. N.D.C.C. § 12.1–20–11 (incest as a Class C Felony). "The function of the courts is to interpret the law, not to legislate, regardless of how much we might desire to do so." *Olson v. Workforce Safety and Ins.*, 2008 ND 59, ¶ 23, 747 N.W.2d 71 (internal quotation omitted).

A

[¶ 11]  The district court found "that incest between a father and one or more of his daughters is sexually predatory conduct as it involves a gross breach of the duty a parent has to provide for the welfare of his children, a parent being in a position to influence or manipulate his children." This finding represents an erroneous view of the law because incest between consenting adults is not sexually predatory conduct under N.D.C.C. § 25–03.3–01(9). The identification of conduct as sexually predatory is significant because each of the three prongs associated with a commitment analysis limits the types of behavior and evidence that can be considered. *See* N.D.C.C. § 25–03.3–01(8). Here, the district court's limited findings make it unclear how the erroneous view of law affected the analysis of whether Voisine is a sexually dangerous individual.

[¶ 12]  Under the first prong of a commitment analysis, only conduct that is sexually predatory can be used to determine if an individual has engaged in sexually predatory conduct. N.D.C.C. § 25–03.3–01(8). Voisine's 2006 conviction for gross sexual imposition against a 6– or 7–year–old male could satisfy this prong under N.D.C.C. § 25–03.3–01(9)(a)(4), (a)(7) and (b)(2). *See In re Barrera*, 2008 ND 25, ¶ 6, 744 N.W.2d 744 (respondent's conviction for gross sexual imposition against a seven-year-old female satisfied the first prong of the commitment analysis). However, without specific findings, we cannot conclude the district court's legal error did not improperly influence the remainder of its prong one analysis. Had the district court considered and decided that the conduct underlying Voisine's gross sexual imposition conviction satisfied the first prong, the court's erroneous classification of incest may have been harmless. Without this finding, however, we cannot uphold this

portion of the district court's commitment order without speculating about the district court's thought process and without improperly substituting our judgment for that of the trier of fact. *In re R.A.S.*, 2008 ND 185, ¶ 8, 756 N.W.2d 771 ("This Court cannot review a district court's decision when the court does not provide any indication of the evidentiary and theoretical basis for its decision because we are left to speculate what evidence was considered and whether the law was properly applied."). The district court erred when it did not make findings on the first prong of the commitment analysis other than those related to incest.

[¶ 13] Although our determination of the first prong is dispositive of this case, we address the second and third prongs because their analysis is likely to arise on remand. *See Dosland v. Netland*, 424 N.W.2d 141, 142 (N.D.1988) (allowing review of issues likely to arise on remand). Under the second prong of the commitment analysis, all conduct of a sexually predatory nature can be used to determine if an individual has a congenital or acquired condition manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction. *In re P.F.*, 2006 ND 82, ¶¶ 2, 20, 712 N.W.2d 610 (allowing respondent's midnight-peeping to be considered under the second prong, despite the conduct not meeting the statutory definition of sexually predatory conduct). Because the district court's order did not address the second prong of the commitment analysis, we are unable to adequately review this portion of the court's analysis. *In re R.A.S.*, 2008 ND 185, ¶ 8, 756 N.W.2d 771. The district court erred as a matter of law when it committed Voisine as a sexually dangerous individual without including in its commitment order any findings or conclusions related to Voisine's diagnosis with a sexual, personality or mental disorder or dysfunction. *Id.*

[¶ 14] Under the third prong of the commitment analysis, evaluating psychologists can "use the fullness of their education, experience and resources available to them in order to determine if an individual poses a threat to society." *In re M.B.K.*, 2002 ND 25, ¶ 18, 639 N.W.2d 473. This standard applies equally to experts and courts alike, and its inclusive nature leads us to conclude that all relevant conduct should be considered under this prong of the analysis. Here, the district court determined Voisine is likely to engage in further acts of sexually predatory conduct after considering Voisine's incestuous relations, his sexual contact with children and the enabling attitudes of his immediate family. These findings are based on appropriately considered behavior and are supported by evidence before the district court. The district court did not err in determining that Voisine is likely to engage in further acts of sexually predatory conduct endangering the safety of others. This one prong, however, is not enough to uphold Voisine's commitment as a sexually dangerous individual.

IV

[¶ 15] The district court took an erroneous view of the law when it found that incest between consenting adults is sexually predatory conduct. We are unable to say if the remainder of the district court's commitment order was adversely influenced by this error because no findings exist for the first and second prongs of the court's commitment analysis. In light of this error, and because we are unable to interpret the district court's conclusions through its findings, we reverse the commitment order and remand for further proceedings and findings of fact consistent with this opinion.

[¶ 16] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.