787 N.W.2d 752 (2010)
2010 ND 163
In the Matter of A.M.
Cynthia M. Feland, Assistant Burleigh County State's Attorney, Petitioner and Appellee
v.
A.M., Respondent and Appellant.
No. 20100014.
Supreme Court of North Dakota.
August 23, 2010.
*754 Cynthia M. Feland (argued), Assistant State's Attorney, Courthouse, Bismarck, ND, for petitioner and appellee.
Susan Schmidt (argued), Bismarck, ND, for respondent and appellant.
KAPSNER, Justice.
[¶ 1] A.M. appeals a district court order extending his commitment to the North Dakota State Hospital as a sexually dangerous individual. We hold the district court's finding that A.M. is a sexually dangerous individual is not clearly erroneous and affirm the order for commitment.

I.
[¶ 2] A.M. is a twenty-eight-year-old male. A.M. was adjudicated to be a juvenile delinquent in 1997 for committing multiple counts of gross sexual imposition from the ages of thirteen to fifteen. In 1999, months prior to his scheduled release from a youth correctional center, the State petitioned to have A.M. found a sexually dangerous individual and committed to the state hospital. The district court granted the petition, and A.M. has remained involuntarily committed since that time.
[¶ 3] In December 2009, the district court held an annual review hearing for A.M. Lynn Sullivan, a forensic psychologist at the state hospital, testified she performed an annual review of A.M. in late 2008. Sullivan testified A.M. was diagnosed with pedophilia, sexually attracted to both sexes, non-exclusive type; fetishism; and antisocial personality disorder in 1999, as well as paraphilia not otherwise specified (nonconsent) in 2007. Sullivan testified the diagnoses of pedophilia and antisocial personality disorder no longer apply, but A.M. continues to suffer from fetishism and paraphilia not otherwise specified (nonconsent). Sullivan stated A.M. has not demonstrated symptoms of fetishism over the last several years, but added A.M. has not had access to female underwear over this time period, which was the original object of his fetish.
[¶ 4] Sullivan acknowledged the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) does not include the diagnosis of "paraphilia not otherwise specified (nonconsent)," only "paraphilia not otherwise specified." However, Sullivan stated "[t]he DSM can't possibly list all of the different potential diagnosis, paraphilic diagnosis that are present out there, there's a multitude." She also said there is a proposal to include paraphilia not otherwise specified (nonconsent) in the next edition of the DSM, though it would be called "Paraphilic Coercive Disorder."
[¶ 5] Sullivan testified "[t]here are no established criteria for a diagnosis of nonconsent," but stated "the general construct is forcing unwanted sexual contact on persons that don't want it." Sullivan testified she added the "nonconsent" to A.M.'s diagnosis of paraphilia not otherwise specified because "the behavior I was observing in [A.M.] was an interest in sexual contact with people that did not want it or people that were nonconsenting...." Sullivan cited several examples of such behavior:

*755 [I]n 2005, [A.M.] actually made sexual contact with the social worker [at the state hospital], he groped her and kissed her against her will. In 2006, he verbally assaulted the same social worker and stated that if the [2005] attack had occurred in a dark alley, it would have resulted in rape and murder or would have been close to rape and murder. In 2007, he was reporting continuing fantasies of rape and violence.
Sullivan testified the social worker had to be moved to a different unit as a result of A.M.'s behavior. More recently, Sullivan stated A.M. has continued to act inappropriately towards the social worker: "[H]e's also continued to go out of his way to observe the female social worker, who is no longer on his unit but he has climbed on chairs to look outside the windows. Windows are frosted most of the way up but at the top they're clear. So he's gone out of his way to look at the social worker as she walks around the campus." Sullivan stated members of A.M.'s treatment group reported this behavior to state hospital workers. Sullivan testified A.M. became agitated when the social worker was most recently in his building. While Sullivan did not know the exact reason for A.M.'s agitation, she said "[t]he inference might be that he was interested in trying to see her or excited about the fact that she was, you know, close to him."
[¶ 6] Sullivan testified she believes A.M. is likely to engage in further acts of sexual predatory conduct, explaining:
I found that he has continued to, in treatment, really not do very much. Although he has progressed tohe's currently at Stage 2 of a six-stage treatment program. He is really not participating very much in treatment. He's not saying very much. When he has been asked to present his treatment plan ... he hasn't adequately fulfilled those expectations....
Also he has been found to, as I said, be watching this female staff member that he's been obsessed with for several years now and going out of his way to be able to see her. This sort of indicates to me that he continues to have problems with controlling his sexual behavior with regard to stalking behaviors.
Something else that I found was that he is engaging in stalking-type behaviors and focusing on the sexual body parts of other female staff in his unit. And he has stated that he doesn't see this sort of behavior as the same stalking that he did of the female social worker because, quote, he was not trying to pursue a relationship with these latter women.
Sullivan stated "the fact that [A.M.] doesn't want a relationship with these women but is sexually attracted to them and masturbates to them, tells me that it's... paraphilia, a sexual disorder, because he just doesn't care about having a relationship with them."
[¶ 7] Sullivan also testified she believes A.M. has serious difficulty controlling his behavior:
I believe that on the basis of [A.M.'s] continued stalking of the social worker and inappropriate sexual fantasies and masturbation to other female staff, that demonstrates serious difficulty and unwillingness or inability to control his sexual behavior.
If he's unwilling or unable to control his sexual behavior in the most restrictive environment we have, then there's nothing to tell me that he would be able to control that behavior if released to a less restrictive alternative environment....
Despite believing A.M. has serious difficulty controlling his behavior, Sullivan acknowledged *756 A.M. has not committed any criminal sexual offenses as an adult.
[¶ 8] Since completing her annual review in December 2008, Sullivan stated she had an opportunity to review A.M.'s 2009 treatment notes. She testified A.M. is "continuing to engage in the similar behaviors to what he had in the past, particularly in treatment.... He has continued to admit that he spends a great deal of his time in fantasy as opposed to reality." Sullivan testified the 2009 treatment notes indicate "[A.M.] has been seen several times on chairs watching ... the social worker walking around. [A.M.'s therapist] is concerned that if [A.M.] was out in the community, he would be stalking this female staff member."
[¶ 9] Stacy Benson, a licensed psychologist, testified she performed an independent evaluation of A.M. Benson stated she reviewed "all of [A.M.'s] independent evaluations and his last year of treatment [notes]," interviewed A.M. twice, and determined he does not presently suffer from a sexual or mental disorder. Specifically, Benson testified she disagrees with Sullivan over the diagnosis of paraphilia not otherwise specified (nonconsent). Benson explained why she does not think the diagnosis is applicable:
First of all, the diagnosis is fairly controversial. It is not specifically listed in the DSM as a diagnosis. There's been several journal articles written by a number of different individuals arguing whether or not it is a diagnosis or should be a diagnosis....
Another reason why I disagree with that is because the paraphilia NOS [not otherwise specified] categories are reserved for disorders that are so rare that they occur less than the other paraphilic disorders that are included in the DSM. The DSM includes the most common one and then the others are included under the NOS category. For example, sexual sadism, which is probably the closest diagnosis to paraphilia NOS (nonconsent), is included in the DSM and said to occur in approximately 2 to 4 percent of rapists. That would mean that paraphilia NOS would likely need to occur in less than 2 to 4 percent of rapists in order to actually be a disorder, which would mean that it could not be reserved for just anybody who has fantasies about nonconsent or who has been involved in nonconsent. If it were, every person charged with a sexual crime could be diagnosed with paraphilia NOS (nonconsent) because every sexual crime, by definition, has a nonconsenting victim.
Benson testified A.M.'s rape fantasies are not sufficient for a diagnosis of paraphilia not otherwise specified (nonconsent) for several reasons. Benson noted studies of male sexual fantasies showed "31 percent of general population males reported having some form of fantasy relating to rape or sexual dominance," A.M. reported being more aroused by thoughts of consensual sex than forced sex, and A.M.'s records indicate he only fantasized about rape once or twice per year.
[¶ 10] Benson also discussed A.M.'s history of forceful sexual behavior. Benson stated A.M. generally relied on "grooming rather than force" when he committed sexual assaults as a juvenile: "There was no indication anywhere in [A.M.'s charts], where I read, where he had used physical force." Benson testified no evidence demonstrates A.M. is aroused by a victim's lack of consent, which is part of the diagnosis of paraphilia not otherwise specified (nonconsent). Benson acknowledged A.M. "leaned in and kissed" the social worker in 2005, but she stated it appears he stopped when asked and there is no indication A.M. knew his sexual advances *757 were unwanted before he kissed her. Benson stated the state hospital dropped A.M. two stages in a six-stage treatment program as a result of the 2005 incident.
[¶ 11] Benson testified she does not believe A.M. is likely to engage in further acts of sexually predatory conduct. Benson stated it is difficult to assess A.M. because he committed sexually predatory acts as a juvenile, and the state hospital used risk assessment tests designed for adult offenders. Benson added that juvenile sexual offenders generally have a much lower recidivism rate than adult offenders. In addition, Benson stated the evidence does not establish A.M. would have difficulty controlling his behavior. While Benson acknowledged A.M. had difficulty controlling his behavior as a juvenile, she stated studies have shown the brain matures over time, which provides adults with greater self-control. Benson also noted A.M. does not have a history of defying rules while at the state hospital. Finally, Benson testified there is a "strong possibility" A.M. may still have a fetish for women's underwear, but stated that alone is no reason for him to remain committed at the state hospital.
[¶ 12] The district court found "[A.M.] continues to suffer from the sexual disorders of paraphilia NOS and fetishism." As support, the district court noted: "[A.M.] has been passive rather than active in the sexual offender treatment program.... While in treatment [A.M.] continues to spend approximately 60% of his time in fantasy focusing on a particular individual and on body parts." The district court also found A.M. is likely to engage in further acts of sexually predatory conduct and has serious difficulties controlling his behavior because he "has been unable to control his behaviors in the most restrictive and controlled setting." Thus, the district court concluded: "[A.M.] has not received sex offender treatment sufficient to lower his risk of engaging in further acts of sexually predatory conduct as evidenced by the report and testimony of the State's expert." The district court ordered A.M. shall remain committed at the state hospital. A.M. now appeals the district court order.

II.
[¶ 13] Before an individual may be committed as a "sexually dangerous individual," the State must prove by clear and convincing evidence (1) the individual has engaged in sexually predatory conduct, (2) the individual has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction, and (3) the condition makes the individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others. Matter of Voisine, 2010 ND 17, ¶ 9, 777 N.W.2d 908 (citing N.D.C.C. §§ 25-03.3-01(8), 25-03.3-13). In addition, as a result of substantive due process concerns, the State must also demonstrate by clear and convincing evidence that the individual has serious difficulty controlling his behavior. Voisine, at ¶ 9 (citing In re E.W.F., 2008 ND 130, ¶ 10, 751 N.W.2d 686; Kansas v. Crane, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002)).
[¶ 14] We review civil commitments of sexually dangerous individuals under a modified clearly erroneous standard. Voisine, 2010 ND 17, ¶ 8, 777 N.W.2d 908. We "will affirm the district court's decision unless the court's order is induced by an erroneous view of the law, or we are firmly convinced the order is not supported by clear and convincing evidence." *758 Id. (quoting In re R.A.S., 2008 ND 185, ¶ 5, 756 N.W.2d 771).

A.
[¶ 15] A.M. argues the district court's finding that he "suffer[s] from the sexual disorders of paraphilia NOS and fetishism" is clearly erroneous. "Under the second prong of the commitment analysis, all conduct of a sexually predatory nature can be used to determine if an individual has a congenital or acquired condition manifested by a sexual disorder...." Voisine, 2010 ND 17, ¶ 13, 777 N.W.2d 908 (citing In re P.F., 2006 ND 82, ¶¶ 2, 20, 712 N.W.2d 610).
[¶ 16] A.M. claims the district court erred because the evidence establishes the diagnosis of paraphilia not otherwise specified (nonconsent), as applied by Sullivan, is not valid. Benson testified there are no established criteria for the diagnosis of paraphilia not otherwise specified (nonconsent), and the authors of the DSM-IV specifically excluded it from the diagnostic manual. Benson also testified the DSM-IV provides the diagnosis of paraphilia not otherwise specified only applies to a small percentage of individuals with sexual disorders. However, A.M. notes Sullivan testified her main criterion for the diagnosis of paraphilia not otherwise specified (nonconsent) is "forcing unwanted sexual contact on persons that don't want it." As nearly all sexually predatory conduct involves non-consenting victims, A.M. claims Sullivan's version of paraphilia not otherwise specified (nonconsent) is applicable to a percentage of sexual predators far exceeding accepted diagnostic standards. Therefore, A.M. claims this Court should hold the district court erred by accepting Sullivan's diagnosis as being valid.
[¶ 17] Further, even if this Court accepts paraphilia not otherwise specified (nonconsent) as a valid diagnosis, A.M. argues the district court's finding that he suffers from it is clearly erroneous because the evidence does not establish he has a sexual disorder involving a proclivity for non-consenting victims. A.M. notes the sexually predatory conduct underlying his commitment did not involve non-consenting victims. In addition, while he has had occasional rape fantasies, A.M. argues Benson's testimony establishes such fantasies are not sufficient to support a sexual disorder diagnosis. Benson testified one-third of the male population have fantasies involving rape or forced sexual contact, and there is no indication A.M. is aroused by a lack of consent. Finally, A.M. claims the record does not establish whether, before he kissed the social worker at the state hospital in 2005, A.M. knew she did not consent to such contact. Therefore, A.M. argues the district court's finding that he suffers from paraphilia not otherwise specified (nonconsent) is clearly erroneous.
[¶ 18] We hold the district court's finding that A.M. "suffer[s] from the sexual disorders of paraphilia NOS and fetishism," and he therefore has a congenital or acquired condition manifested by a sexual disorder, is not clearly erroneous. Both Sullivan and Benson testified A.M. may still have a fetish for women's underwear. In addition, Sullivan diagnosed A.M. with paraphilia not otherwise specified (nonconsent) because, as she testified, "the behavior I was observing in [A.M.] was an interest in sexual contact with people that did not want it or people that were nonconsenting...." Sullivan provided examples of such behavior:
[I]n 2005, [A.M.] actually made sexual contact with the social worker, he groped her and kissed her against her will. In 2006, he verbally assaulted the same social worker and stated that if the attack had occurred in a dark alley, it *759 would have resulted in rape and murder or would have been close to rape and murder. In 2007, he was reporting continuing fantasies of rape and violence.
More recently, Sullivan stated A.M. has continued to act inappropriately towards the social worker: "[H]e's also continued to go out of his way to observe the female social worker, who is no longer on his unit but he has climbed on chairs to look outside the windows." Sullivan also testified A.M.'s ongoing masturbation and fantasies involving female state hospital workers are evidence of a sexual disorder.
[¶ 19] While Benson's testimony regarding paraphilia not otherwise specified (nonconsent) directly conflicts with that of Sullivan, we have repeatedly stated "[e]valuation of credibility where evidence is conflicting is solely a trial court function." Matter of Hehn, 2008 ND 36, ¶ 23, 745 N.W.2d 631 (quoting Alumni Ass'n v. Hart Agency, Inc., 283 N.W.2d 119, 121 (N.D.1979)). In addition, while A.M. argues this Court should reject the diagnosis of paraphilia not otherwise specified (nonconsent) as applied by Sullivan, A.M. did not object to Sullivan's testimony or move to strike it from the record for lacking scientific foundation. As a result, the district court could rely upon Sullivan's testimony and diagnosis in making its decision, and its finding that A.M. has a congenital or acquired condition manifested by a sexual disorder is not clearly erroneous. See Aasmundstad v. State, 2008 ND 206, ¶ 16, 763 N.W.2d 748 ("A district court's choice between two permissible views of the weight of the evidence is not clearly erroneous....").

B.
[¶ 20] A.M. argues the district court's finding that he is likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others is clearly erroneous because it is unsupported by evidence. A.M. claims Benson's testimony establishes he is unlikely to re-offend. Benson testified recidivism rates for juvenile sexual offenders such as A.M. are much lower than for adult offenders. Benson also stated sexual fantasies involving rape or force are relatively common among the male population, and simply because A.M. has reported such fantasies does not establish he is likely to commit further acts of sexually predatory conduct. In addition, A.M. notes that, because he committed sexual predatory conduct as a juvenile, and he is now an adult, the State cannot rely on normal risk-assessment tests to determine his risk of re-offending. A.M. claims the absence of such test results deprived the district court of objective evidence to determine the risk that he will commit further acts of sexually predatory conduct.
[¶ 21] We hold the district court's finding that A.M. is likely to engage in further acts of sexually predatory conduct is not clearly erroneous. Sullivan testified she believes A.M. is likely to engage in further acts of sexually predatory conduct, largely based upon his behavior towards the female social worker. Sullivan testified:
[I]n 2005, [A.M.] actually made sexual contact with the social worker, he groped her and kissed her against her will. In 2006, he verbally assaulted the same social worker and stated that if the attack had occurred in a dark alley, it would have resulted in rape and murder or would have been close to rape and murder. In 2007, he was reporting continuing fantasies of rape and violence.
Thus, the evidence establishes A.M. kissed and groped the social worker against her will, and, by A.M.'s own admission, he might have raped and murdered her had *760 the incident taken place outside the state hospital. A.M.'s statement indicates he may act upon his rape fantasies once released from the state hospital, and the district court did not err by relying upon such evidence in finding A.M. is likely to engage in further acts of sexually predatory conduct. In addition, although Benson testified she does not believe A.M. is likely to engage in further acts of sexually predatory conduct, "[a] district court's choice between two permissible views of the weight of the evidence is not clearly erroneous...." Aasmundstad, 2008 ND 206, ¶ 16, 763 N.W.2d 748.

C.
[¶ 22] A.M. argues the district court's finding that he has serious difficulty controlling his behavior is clearly erroneous. In addition to the statutory requirements of N.D.C.C. § 25-03.3-01(8), "to satisfy substantive due process the State must also prove the committed individual has serious difficulty controlling his behavior." In re Midgett, 2010 ND 98, ¶ 8, 783 N.W.2d 27. Such proof is necessary "to distinguish a dangerous sexual offender whose disorder subjects him to civil commitment from the dangerous but typical recidivist in the ordinary criminal case." Id. at ¶ 9 (quoting Interest of J.M., 2006 ND 96, ¶ 10, 713 N.W.2d 518).
[¶ 23] A.M. argues the district court's finding is unsupported by evidence. While the evidence establishes he kissed and groped the social worker in 2005, A.M. claims he stopped when she asked him to, and, during the five years since, he has not made unwanted sexual advances upon the social worker or anyone else at the state hospital. In addition, A.M. claims the evidence establishes he has not acted upon any of his rape fantasies, which demonstrates he is able to control his behavior.
[¶ 24] We hold the district court's finding that A.M. has serious difficulty controlling his behavior is not clearly erroneous. Sullivan testified that, following the 2005 incident, A.M. has "continued to go out of his way to observe the female social worker, who is no longer on his unit but he has climbed on chairs to look outside the windows. Windows are frosted most of the way up but at the top they're clear." A.M. has continued to observe the social worker despite having been demoted two stages in his treatment program as a result of his interactions with her. As the district court correctly recognized: "[E]ven in this very, very controlled setting where he knows he's being watched, he's taking steps to look at and to continue with this fantasy behavior concerning the social worker."

III.
[¶ 25] We hold the district court's finding that A.M. is a sexually dangerous individual is not clearly erroneous and affirm the order for commitment.
[¶ 26] GERALD W. VANDE WALLE, C.J., JOHN C. McCLINTOCK, JR., D.J., MARY MUEHLEN MARING and DANIEL J. CROTHERS, JJ., concur.
[¶ 27] The Honorable JOHN C. McCLINTOCK, JR., D.J., sitting in place of SANDSTROM, J., disqualified.