Filed 4/12/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 76

In the Matter of Jeffrey Keith Wolff 

----------------------------------

Birch P. Burdick, State’s Attorney, Petitioner and Appellee

v.

Jeffrey Keith Wolff, Respondent and Appellant

No. 20100290

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable John Charles Irby, Judge.

AFFIRMED.

Opinion of the Court by Maring, Justice.

Birch P. Burdick, State’s Attorney, P.O. Box 2806, Fargo, N.D. 58108-2806, petitioner and appellee.

Richard E. Edinger, P.O. Box 1295, Fargo, N.D. 58107-1295, for respondent and appellant.

Matter of Wolff

No. 20100290

Maring, Justice.

[¶1] Jeffrey Keith Wolff appeals from a trial court order denying his petition for discharge from commitment as a sexually dangerous individual.  He argues the trial court erred in finding the State proved by clear and convincing evidence he has serious difficulty controlling his behavior.  We affirm.

I

[¶2] In April 2006, the trial court found Wolff to be a sexually dangerous individual and committed him to the care, custody, and control of the executive director of the Department of Human Services.  In May 2010, Wolff filed a petition for discharge and requested a hearing.  Dr. Lynne Sullivan, a licensed psychologist at the North Dakota State Hospital, completed an annual evaluation of Wolff and recommended his continued commitment on the ground Wolff remains a sexually dangerous individual who has serious difficulty controlling his behavior and who is likely to engage in further acts of sexually predatory conduct.  Per Wolff’s request, the trial court appointed Dr. Robert Riedel, a licensed psychologist, to complete an independent evaluation of Wolff.  Dr. Riedel evaluated Wolff and recommended his discharge from commitment, opining Wolff was unlikely to re-offend if released.

[¶3] The trial court held a discharge hearing on July 20, 2010, and heard testimony from both experts.  Dr. Sullivan testified that Wolff had committed sex offenses in the past, that he suffers from antisocial personality disorder with borderline traits and from substance abuse, and that he is likely to engage in further acts of sexually predatory conduct.  Dr. Riedel agreed with Dr. Sullivan on Wolff’s past sex offenses and his antisocial personality disorder diagnosis.  However, contrary to Dr. Sullivan, Dr. Riedel testified Wolff is not likely to re-offend if discharged from commitment.

[¶4] The trial court issued its findings of fact, conclusions of law, and order for continued commitment on August 9, 2010.  The court found the State proved by clear and convincing evidence Wolff remains a sexually dangerous individual and, accordingly, denied his petition for discharge.  Wolff timely appealed.

II

[¶5] “We review civil commitments of sexually dangerous individuals under a modified clearly erroneous standard of review.”  
Whelan v. A.O.
, 2011 ND 26, ¶ 5, 793 N.W.2d 471.  “We will affirm a trial court’s order denying a petition for discharge unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence.”  
Id.
  In reviewing the trial court’s order, we give great deference to the court’s credibility determinations of expert witnesses and the weight to be given their testimony.  
Id.
  The trial court is the best credibility evaluator in cases of conflicting testimony and we will not second-

guess the court’s credibility determinations.  
Matter of Hanenberg
, 2010 ND 8, ¶ 9, 777 N.W.2d 62.

[¶6] At a discharge hearing, the State has the burden of proving by clear and convincing evidence the committed individual remains a sexually dangerous individual.  
Matter of Midgett
, 2009 ND 106, ¶ 6, 766 N.W.2d 717.  A sexually dangerous individual is one who (1) has engaged in sexually predatory conduct;  (2) has a sexual, personality, or other mental disorder; and (3) is likely to engage in further acts of sexually predatory conduct as a result of his disorder.  N.D.C.C. § 25-

03.3-01(8).

[¶7] In addition to the three statutory requirements, to satisfy substantive due process, the State must also prove the committed individual has serious difficulty controlling his behavior.  
Midgett
, 2009 ND 106, ¶ 6, 766 N.W.2d 717; 
see also
 
Kansas v. Crane
, 534 U.S. 407, 412-13 (2002).  Recognizing, as the United States Supreme Court did in 
Kansas v. Crane
, that constitutional considerations require a connection between the disorder and the lack of control, we have stated:

We construe the definition of a sexually dangerous individual to mean that proof of a nexus between the requisite disorder and dangerousness encompasses proof that the disorder involves serious difficulty in controlling behavior and suffices to distinguish a dangerous sexual offender whose disorder subjects him to civil commitment from the dangerous but typical recidivist in the ordinary criminal case.

Interest of J.M.
, 2006 ND 96, ¶ 10, 713 N.W.2d 518; 
Crane
, 534 U.S. at 412-13.  We have further explained that a diagnosis of antisocial personality disorder alone does not establish a nexus between the requisite disorder and future dangerousness.  
Interest of J.M.
, at ¶ 10.  Rather, the evidence presented by the State must clearly show the antisocial personality disorder is likely to manifest itself in a serious difficulty in controlling one’s behavior.  
Id.
  Neither 
Kansas v. Crane
 nor our case law, however, require the conduct evidencing the individual’s serious difficulty in controlling his behavior to be sexual in nature.   
See
 
Crane
, 534 U.S. at 412-13 (holding the Constitution only requires proof of serious difficulty in controlling behavior); 
Matter of R.A.S.
, 2009 ND 101, ¶ 19, 766 N.W.2d 712 (explaining that in order to continue an individual’s commitment, North Dakota’s statute does not require proof of conduct sexual in nature after the individual’s initial commitment).  To the extent Wolff argues our decision in 
Interest of J.M.
, 2006 ND 96, ¶ 10, 713 N.W.2d 518, should be read to require proof of an individual’s serious difficulty in controlling his behavior be sexual in nature, we now clarify that not to be true.

III

[¶8] On appeal, Wolff does not dispute that he previously engaged in sexually predatory conduct or that he has been diagnosed with a personality disorder that meets the criteria under the second prong of N.D.C.C. § 25-03.3-01(8).  Rather, he argues the trial court erred in denying his petition for discharge because the State failed to prove by clear and convincing evidence Wolff has serious difficulty controlling his behavior.  Specifically, Wolff contends the State failed to establish a nexus between his antisocial personality disorder and his future dangerousness. We disagree.

[¶9] The trial court found the State proved by clear and convincing evidence Wolff has serious difficulty controlling his behavior, “even in a structured setting such as the North Dakota State Hospital.”  To support its finding, the trial court listed a number of acts committed by Wolff since his last evaluation, which indicate he has serious difficulty controlling his behavior.  In particular, the trial court noted Wolff has acted inappropriately toward hospital staff, has violated the rules of his treatment program, has made minimal progress in his sex offender treatment, has shown no empathy for his victims, and has psychopathic traits, which make him “impulsive, sensation seeking, irresponsible, and violative of social and legal norms.”  The court explained:

Wolff’s chart was reviewed for progress since his last evaluation.  He has been rude to staff and has yelled profanities at them.  He has displayed an explosive temper.  He at times has refused to attend treatment group or has been prohibited from attending due to his attitude.

. . .

By his own admission Wolff acknowledges that women are nothing more than objects to him. . . .  He showed no empathy for his victim and referred to the person he victimized as overweight and mentally slow and just ‘a piece of ass.” He admitted to inappropriately acting out in a sexual manner with a peer.  His therapist noted that his attitude and sarcasm remain unchanged and that he was not progressing in treatment.

. . .

He makes minimal progress in his treatment. . . . As of yet he has not adequately participated in the course of Intensive Sex Offender Treatment that would mitigate his statistically high-risk [to re-offend].

[¶10] In finding Wolff has serious difficulty controlling his behavior, the trial court relied primarily on the testimony of Dr. Sullivan.  Dr. Sullivan testified Wolff suffers from antisocial personality disorder with borderline traits and stated he has been diagnosed with controlled substance abuse, including alcohol, cannabis, and amphetamine abuse.  She scored Wolff at a seven on the Static-99R risk-assessment test.  She explained a score of seven indicates a 48.6 percent likelihood for re-

offending over a period of ten years, which she noted was significantly higher than the thirteen or fourteen percent of the general population of sex offenders.  She further explained that Wolff’s score on the Static-99R makes him 3.8 times more likely to sexually re-offend than the average sex offender.  Additionally, Dr. Sullivan placed Wolff at a high risk for re-offending based on his score on the MnSOST-R and testified Wolff’s score of 39/40 on the Psychopathy Checklist Test shows he lacks the ability to control his behavior.

[¶11] Dr. Sullivan testified Wolff’s antisocial personality disorder makes him impulsive, apathetic toward others, and hostile toward women who he considers to be mere sexual objects for his own use.  Concerning Wolff’s treatment, Dr. Sullivan testified he has failed to make adequate progress in sex offender treatment and has in fact admitted “he is afraid he might not make it once he is released.”  Moreover, she noted that although Wolff has been diagnosed with substance abuse, he has not participated in chemical dependency treatment, which increases his risk for re-

offending.

[¶12] Dr. Sullivan stated Wolff has been unable to control his conduct for most of his commitment at the North Dakota State Hospital and explained that the numerous write-ups he has received for breaking unit rules indicate he lacks the ability to control his behavior.  She testified Wolff has continued to act out despite the security of his environment, which further indicates he has serious difficulty controlling his behavior and is likely to re-offend if released to the community where he will have no supervision.  Thus, Dr. Sullivan opined Wolff’s antisocial personality disorder and his results on the risk assessment and psychopathy tests make Wolff “unusually [un]willing or unable to control his behavior.”

[¶13] Dr. Riedel disagreed with Dr. Sullivan’s conclusion Wolff has serious difficulty controlling his behavior.  He opined Wolff is “much more like your common criminal . . . than he is a sex offender who meets the standards of [N.D.C.C. § 25-03.3-01(8)].”  He testified that, even though Wolff is not “very good at controlling” his antisocial behaviors, he has shown reasonable ability in controlling his sexual behavior.  Accordingly, Dr. Riedel concluded Wolff is not likely to re-

offend if released.  The trial court, however, rejected Dr. Riedel’s opinion, explaining that although Dr. Riedel tested Wolff extensively, he did not adequately consider Wolff’s actual behavior and lack of progress in sex offender treatment.

[¶14] We give great deference to a trial court’s credibility determinations of expert witnesses and the weight to be given their testimony.  
Whelan v. A.O.
, 2011 ND 26, ¶ 5, 793 N.W.2d 471.  We have consistently held the trial court is the best credibility evaluator in cases of conflicting testimony and have refused to second-guess its credibility determination.   
See, e.g.,
 
Matter of Hanenberg
, 2010 ND 8, ¶ 9, 777 N.W.2d 62.  We have further explained that a choice between two permissible views of the weight of the evidence is not clearly erroneous.  
Matter of A.M.
, 2010 ND 163, ¶ 21, 787 N.W.2d 752.  Dr. Sullivan’s testimony supports the trial court’s finding Wolff has serious difficulty controlling his behavior and is likely to re-offend if released to the community.  Under our modified clearly erroneous standard of review, we conclude sufficient evidence exists to support the trial court’s finding the State showed a nexus between Wolff’s antisocial personality disorder and his lack of control, which distinguishes him from the typical recidivist in an ordinary criminal case.  Accordingly, we conclude the trial court’s finding the State proved by clear and convincing evidence Wolff has serious difficulty controlling his behavior is not clearly erroneous.

IV

[¶15] We affirm the trial court’s order denying Wolff’s petition for discharge and continuing his commitment as a sexually dangerous individual.

[¶16] Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.