2016 ND 254

## In the INTEREST OF Raymond VOISINE

**Jonathan Byers, Special Assistant State's Attorney, Petitioner and Appellee**

v.

**Raymond J. Voisine, Respondent and Appellant**

No. 20160061

Supreme Court of North Dakota.

Filed 12/30/2016

Jonathan R. Byers, Special Assistant State's Attorney, Office of the Attorney General, Bismarck, ND, petitioner and appellee.

Kent M. Morrow, Bismarck, ND, for respondent and appellant.

VandeWalle, Chief Justice.

[¶ 1] Raymond Voisine appealed a district court order finding he remains a sexually dangerous individual and denying his petition for discharge from the North Dakota State Hospital. We affirm.

## I.

[¶ 2] Stemming from his conviction of gross sexual imposition in 2008, the State petitioned to commit Voisine to the state hospital as a sexually dangerous individual under N.D.C.C. ch. 25–03.3.

[¶ 3] Voisine's actions, leading to his civil commitment as a sexually dangerous individual, have resulted in six previous appeals to this Court. *See Voisine v. State*, 2008 ND 91, 748 N.W.2d 429 (reversing and vacating revocation of probation in postconviction proceeding); *Matter of Voisine*, 2010 ND 17, 777 N.W.2d 908 (reversing commitment as sexually dangerous individual and remanding for further proceedings); *Interest of Voisine*, 2010 ND 241, 795 N.W.2d 38 (summarily affirming commitment as sexually dangerous individual); *Interest of Voisine*, 2012 ND 250, 823 N.W.2d 786 (summarily affirming denial of request for discharge from commitment as sexually dangerous individual); *Voisine v. State*, 2014 ND 98, 859 N.W.2d 930 (summarily affirming denial of petition for postconviction relief); *In re Voisine*, 2014 ND 178, 859 N.W.2d 930 (summarily affirming denial of request for discharge from commitment as sexually dangerous individual).

[¶ 4] In December of 2014, Voisine again petitioned for discharge. The district court held a hearing in January of 2016. At the hearing, the State called one witness, Dr. Jennifer Krance, a psychologist at the state hospital. Dr. Krance testified Voisine remained a sexually dangerous individual because Voisine suffered from a congenital or acquired condition that is manifested by a sexual disorder, personality disorder, or mental disorder or dysfunction, he was likely to reoffend, and has serious difficulty in controlling his behavior. Dr. Stacey Benson, a clinical psychologist, testified for Voisine. Dr. Benson disagreed with Dr. Krance's findings and testified she did not

believe Voisine remained a sexually dangerous individual. In February 2016, the district court issued an order finding Voisine remained a sexually dangerous individual and continued his commitment.

## II.

[¶ 5] At a discharge hearing, the burden is on the State to prove by clear and convincing evidence that the committed individual remains sexually dangerous. *In re J.T.N.*, 2011 ND 231, ¶ 4, 807 N.W.2d 570. For the State to meet its burden, it "must prove three statutory elements and establish an additional constitutional requirement that is not a fourth element, but 'is a part of the definition of a "sexually dangerous individual." ' " *Id.* (quoting *Matter of Midgett*, 2010 ND 98, ¶ 7, 783 N.W.2d 27). Under N.D.C.C. § 25–03.3–01(8), "sexually dangerous individual" is defined as:

> an individual [1] who is shown to have engaged in sexually predatory conduct and [2] who has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction [3] that makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.

The State must also prove an additional constitutional requirement which requires the finding that the committed individual has serious difficulty controlling his or her behavior. *J.T.N.*, 2011 ND 231, ¶ 5, 807 N.W.2d 570; *Kansas v. Crane*, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002).

[¶ 6] Civil commitments of sexually dangerous individuals are reviewed under a modified clearly erroneous standard of review. *Midgett*, 2010 ND 98, ¶ 6, 783 N.W.2d 27. This Court explained:

We will affirm a trial court's order denying a petition for discharge unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence. In reviewing the trial court's order, we give great deference to the court's credibility determinations of expert witnesses and weight to be given their testimony. The trial court is the best credibility evaluator in cases of conflicting testimony and we will not second-guess the court's credibility determinations.

*Matter of Wolff*, 2011 ND 76, ¶ 5, 796 N.W.2d 644 (internal quotations and citations omitted).

### III.

[¶ 7] Voisine does not contest he meets the first factor of a sexually dangerous individual, that he has engaged in sexually predatory conduct. Rather, Voisine argues the district court erred when it determined that there was clear and convincing evidence that he (1) suffered from a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction; (2) is likely to engage in further acts of sexually predatory conduct; and (3) has serious difficulty controlling his behavior.

### A.

[¶ 8] Voisine argues the district court "failed to provide any detailed analysis of why Dr. Krance's diagnoses was more credible" than Dr. Benson's diagnoses.

[¶ 9] "Claims that a district court improperly relied on the opinion of one expert instead of another challenge the weight the evidence was assigned, not the sufficiency of the evidence." *J.T.N.*, 2011 ND 231, ¶ 8, 807 N.W.2d 570. We have declined to reweigh expert testimony as "[e]valuation of credibility where evidence is conflicting is solely a trial court function." *Alumni Ass'n of U. of N.D. v. Hart Agency, Inc.*, 283 N.W.2d 119, 121 (N.D. 1979). Additionally, "[w]hen witnesses give conflicting testimony, we do not decide to believe a witness different from the one believed by the district court." *Hill v. Weber*, 1999 ND 74, ¶ 12, 592 N.W.2d 585. "[A] choice between two permissible views of the weight of the evidence is not clearly erroneous." *Wolff*, 2011 ND 76, ¶ 14, 796 N.W.2d 644.

[¶ 10] Here, two doctors testified about Voisine's mental disorders. Dr. Krance diagnosed Voisine with other specified paraphilic disorder and a personality disorder not otherwise specified with antisocial features. Dr. Benson disagreed with these diagnoses, testifying that Voisine was better categorized as having dysthemic disorder, alcohol dependence, and antisocial traits. Ultimately, the district court agreed with Dr. Krance's diagnoses.

[¶ 11] To support her diagnoses, Dr. Krance testified Voisine "had sexual interest or sexually offended against a prepubescent male victim, as well as there having been allegation of hebephilic tendencies of an individual between the age of 12 to 14. . . . There's also indications within the records of incestuous behaviors." When asked about the differences between her diagnosis of antisocial traits and Dr. Krance's diagnosis of a personality disorder not otherwise specified with antisocial features, Dr. Benson testified the psychology profession itself has difficulty drawing lines to distinguish between the diagnoses. Dr. Benson explained, "that unspecified personality disorder has no agreed upon criteria . . . the scientific community doesn't agree . . . what exactly it takes to have that disorder."

[¶ 12] In weighing the testimony, the district court looked at two factors. The

first being that both doctors acknowledge that Voisine was not diagnosed with anti-social personality disorder solely because there was insufficient information concerning his behavior prior to the age of 15. The second factor the district court looked at was Voisine's behavior and lack of reliability. The district court explained:

> Voisine has not provided reliable self-reports and has continued in implausible denials of problematic behavior. For instance, although it has been established by overwhelming evidence that he has been involved in an incestuous relationship resulting in his daughter giving birth to his child, he continues to deny the incest. He was found naked in his room with his roommate present within the past several months, but denies he was naked, suggesting he was wearing tan clothing.

We construe this statement by the district court not to mean that Voisine has the burden to show he doesn't have a mental or sexual disorder, but rather that the State has already met its burden and Voisine has failed to provide anything to refute the State's evidence.

[¶ 13] In the end, Voisine is asking this Court to find that one expert's diagnoses was more correct than another. As stated, we do not reweigh expert testimony. Because the district court's findings were consistent with the evidence presented at the hearing, it was not clearly erroneous to find that Voisine has diagnoses of a sexual disorder and a personality disorder.

**B.**

[¶ 14] Next, Voisine argues the district court erroneously held he was likely to engage in further acts of predatory conduct which constitute a danger to the physical or mental health or safety of others. Voisine's argument is centered around two points: (1) to determine this factor,

test scores from various actuarial evaluations must show a likelihood of engaging in further acts, and (2) the district court incorrectly relied upon Dr. Krance's testimony rather than Dr. Benson's.

[¶ 15] Courts are not restricted to actuarial tests in determining whether an individual is likely to engage in further acts of predatory conduct. *In re Corman*, 2014 ND 88, ¶ 17, 845 N.W.2d 335. Courts and experts may "use the fullness of their education, experience and resources available to them in order to determine if an individual poses a threat to society." *Matter of Voisine*, 2010 ND 17, ¶ 14, 777 N.W.2d 908 (quoting *Interest of M.B.K.*, 2002 ND 25, ¶ 18, 639 N.W.2d 473). "[A]ll relevant conduct should be considered." *Voisine*, 2010 ND 17, ¶ 14, 777 N.W.2d 908. In *Corman*, we recognized the district court's analysis that actuarial scores are not substitutes for judicial decision-making or review; they are merely one factor to weigh in determining whether an individual is likely to engage in further acts of sexually predatory conduct. *Corman*, at ¶ 17 (citing *Matter of Anderson*, 2007 ND 50, ¶ 54, 730 N.W.2d 570 (Kapsner, J., dissenting)).

[¶ 16] As we noted above, a district court's decision as to the weight of expert testimony will not be second-guessed by this Court and a choice between two permissible views of the weight of the evidence is not clearly erroneous.

[¶ 17] Voisine argues that there was not enough evidence presented through Dr. Krance's medical opinion to override Dr. Benson's findings on the actuarial assessments. Voisine points to his low Static–99R score from both of the doctors and argues that Dr. Krance never explained the difference between her score of 32 on the PCL–R and Dr. Benson's score of 22.

[¶ 18] Voisine's argument fails for two reasons. First, as stated, an individual's actuarial scores are only one factor to weigh in determining whether an individual is likely to engage in further acts of sexually predatory conduct. Here, the district court did not rest its finding solely on Voisine's actuarial scores. The district court acknowledged that Voisine did not have high scores on the actuarial tools, but noted there were other factors which led it to conclude that Voisine was likely to reoffend. The district court stated:

> Voisine does not participate well in treatment. He often sleeps through treatment sessions or fails to engage in the discussions. He has exhibited anger requiring intervention. While there have been times when he begins to open up and engage in treatment, those are followed by periods of regression. Mr. Voisine has indicated to treatment professionals he has secrets to share, but has failed to do so. Although Mr. Voisine may be challenged in his ability to read and write, he has failed to accept help with reading or writing which would allow him to participate more fully in treatment.
>
> Mr. Voisine has had 18 resident behavior write-ups since April of 2013, mostly minor. Some have involved dishonesty. Others involved lack of respect for staff. The write-ups are troubling because they demonstrate an on-going unwillingness to follow rules.

[¶ 19] Second, Voisine's argument fails because he is again asking this Court to reweigh the evidence; that is, to find that Dr. Benson's assessments and reasoning are more probative than Dr. Krance's. This Court will not reweigh the evidence presented at the district court. Because it is supported by sufficient evidence, the district court's holding that Voisine is likely to reoffend is not clearly erroneous.

## C.

[¶ 20] Lastly, Voisine argues the district court erroneously found he met the constitutional requirement of having serious difficulty with controlling his behavior.

[¶ 21] In addition to the three prongs required under N.D.C.C. § 25–03.3–01(8), the United States Supreme Court held that a constitutional requirement is needed to satisfy substantive due process. *In re Hehn*, 2008 ND 36, ¶ 19, 745 N.W.2d 631.

> In *Kansas v. Crane*, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), the United States Supreme Court concluded that commitment as a sexually dangerous individual cannot constitutionally be sustained without determining that the person to be committed has serious difficulty in controlling his or her behavior. Therefore, consistent with N.D.C.C. § 1–02–38(1), we have construed the definition of a sexually dangerous individual to require that there must be a nexus between the disorder and dangerousness, proof of which encompasses evidence showing the individual has serious difficulty in controlling his behavior, which suffices to distinguish a sexually dangerous individual from other dangerous persons.

*In re G.R.H.*, 2008 ND 222, ¶ 7, 758 N.W.2d 719 (citing *E.W.F.*, 2008 ND 130, ¶ 10, 751 N.W.2d 686). In determining whether an individual has serious difficulty controlling his or her behavior, a court considers all relevant conduct. *J.T.N.*, 2011 ND 231, ¶ 13, 807 N.W.2d 570. Additionally, in finding an individual has serious difficulty in controlling his or her behavior, "the district court must specifically state in its memorandum opinion the facts upon which its ultimate conclusion is based." *Matter of Rush*, 2009 ND 102, ¶ 10, 766 N.W.2d 720.

[¶ 22] Under our modified clearly erroneous standard of review, we conclude sufficient evidence exists from which the district court could conclude Voisine is a sexually dangerous individual and has serious difficulty controlling his behavior. At the hearing, Dr. Krance testified it was her professional opinion that Voisine had serious difficulty controlling his behavior. She testified she formed her opinion based upon Voisine's lack of progress in his treatment program and his write-up which indicated his dishonesty with the staff. In finding Voisine had serious difficulty controlling his behaviors, the district court relied upon multiple facts, including:

> Mr. Voisine has not participated in a meaningful manner in sexual offender treatment. He has not acknowledged his crime, nor has he learned ways to control his behavior or improve his coping skills. He has not worked on any plans for behavior modification, which would give him the tools he needs to control his behavior. In fact, he appears to not want to work on any of those behaviors.

[¶ 23] We conclude the district court was not clearly erroneous in finding there was a sufficient nexus between Voisine's sexual disorder of other specified paraphilic disorder and his dangerousness and that he has serious difficulty in controlling his behavior.

## IV.

[¶ 24] We affirm the district court's order finding Voisine remains a sexually dangerous individual.

[¶ 25] Lisa Fair McEvers

Daniel J. Crothers

Mary Muehlen Maring

[¶ 26] The Honorable Mary Muehlen Maring, S.J., sitting in place of Sandstrom, J., disqualified.

Kapsner, Justice, dissenting.

[¶ 27] I respectfully dissent from Part C of the majority opinion.

[¶ 28] Section 25–03.3–18, N.D.C.C., subsection 4, provides: "At any hearing held pursuant to a petition for discharge, the burden of proof is on the state to show by clear and convincing evidence that the committed individual remains a sexually dangerous individual." The statute requires evidence that at the time of the hearing the individual is currently dangerous, not that the individual has been dangerous in the past. In addition, the district court must make findings which support the conclusion that the individual is currently dangerous. *Matter of R.A.S.*, 2008 ND 185, ¶¶ 8–9, 756 N.W.2d 771.

[¶ 29] In this order, the district court acknowledged adopting a great deal of language from a prior order of the court dated January 29, 2014. This is not sufficient to comply with the statutory language which requires the court to determine whether Voisine "remains" a sexually dangerous individual, not review whether he was in the past. In what the district court described as "Prong IV: Can Mr. Voisine Control His Behavior?" the district court relied specifically on prior findings by another judge at an earlier hearing. And on this issue, the district court stated, "Finally, the Court finds that Mr. Voisine has not made any progress in his treatment and that he has not demonstrated that he would be able or willing to control his behavior if he were to be released into the community. The Court finds that the State has met the burden of proof on Prong IV as well."

[¶ 30] The district court rather ambiguously seems to place the burden on the

committed individual to show that he has changed from the evidence heard at that last hearing. The statute places the burden on the State to establish current dangerousness. Because the court has not articulated findings that comply with the statute or with *Kansas v. Crane*, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), I would reverse and remand for findings.

*Matter of Johnson*, 2015 ND 71, ¶ 9, 861 N.W.2d 484. Therefore, I dissent.

[¶ 31] Carol Ronning Kapsner