McEvers, Justice, dissenting.
[¶23] I respectfully dissent. The argument on appeal was that the State failed to meet its burden of proof of clear and convincing evidence that J.M. is likely to engage in further acts of sexually predatory conduct, has serious difficulty controlling his behavior, and poses any more of a threat than the typical recidivist. We affirm a district court's commitment order unless it is induced by an erroneous view of the law, or we are firmly convinced the order is not supported by clear and convincing evidence. In the Interest of D.V.A. , 2004 ND 57, ¶ 7, 676 N.W.2d 776.
[¶24] The district court found J.M. was likely to engage in further acts of sexually predatory conduct based on Dr. Byrne's testimony and report, and Dr. Benson's determinations of risk, including the following evidence:
Dr. Byrne's determination that [J.M.] is in the high risk to reoffend category based on his Static 99R score of 7, Dr. Byrne's testimony that [J.M.'s] Other Specified Paraphilic Disorder (polymorphously perverse) and his Antisocial Personality Disorder predisposes [J.M.] to act compulsively and to engage in future acts of sexual predatory conduct, the dynamic factors considered at pages 9-10 of Dr. Byrne's report, Dr. Benson's determination that [J.M.'s] score of 5 on the Static 99R which placed him in the Level IVA-Above Average risk range, his score of 7 on the Static 2002R placed [J.M.] in the Level IVB Well Above *429 Average Risk category, and the results of the SRA-FV on which [J.M.] scored 2.80 which places him in the high risk range.
Pages 9-10 of the report referred to summarized reasons why Dr. Byrne thought J.M. is likely to engage in further acts of predatory conduct. For instance, according to Dr. Byrne, J.M.'s diagnosis of other specified paraphilic disorder (polymorphously perverse) indicates that individuals with that disorder tend to engage in ongoing recurrent and intense sexual fantasies, urges and behaviors involving a wide range of sexual behavior which predisposes J.M. to engage in future sexually predatory conduct. In addition, Dr. Byrne opined that J.M.'s personality disorder adversely affects his ability to modulate the fantasies, urges, and behavior related to the sexual disorders. These pages of Dr. Byrne's report also summarize J.M.'s dynamic factors. While some of the factors weigh in J.M.'s favor or are neutral, a number of them show why he poses a high risk to sexually reoffend, including:
• Impulsive-Partially Present: [J.M.'s] rate of RBW's has decreased significantly but have not been eliminated. His RBW's show he is still not fully and consistently implementing his treatment concepts as he progresses through the treatment program.
• Poor Cognitive Problem Solving-Partially Present: As noted in the descriptions, [J.M.] appears to have the ability to do well in treatment but as he progresses he continues to act out in ways that result in his losing his treatment status. In addition, his writing with profanity and negativity toward his peers in his journal is also not a good solution to his problems in managing himself within the program.
• Negative Emotionality-Present: [J.M.] appears to harbor and cultivate resentments and blames others for his problems which continues to result in anxiety, frustration, and anger.
• Sex Drive/Sexual Preoccupation-Partially Present: [J.M.], after having been masturbating regularly, has now claims to have not had much masturbatory activity due to his religious changes. However, the possibility of his attempting to "look good" is also possibly present as well and it appears unlikely that he would go from regularly masturbating not virtually not doing so.
....
• Deviant Sexual Preference-Present: [J.M.] has at least two prepubescent victims, has admitted to masturbating to prepubescent children while at NDSH. There has been no objective evidence of any treatment changes other that his self-report.
• Cooperation with Supervision-Present: [J.M.'s] RBW's (resident behavioral write-ups), while, reduced, still constitute significant rule breaking on his part and also his journal entries also represent a disdain for treatment.
....
Thus, it is the undersigned professional's opinion that [J.M.] continues to demonstrate "serious difficulty" controlling his behavior that would likely be worse in a less restrictive environment.
[¶25] The district court also found the necessary nexus between J.M.'s condition and the danger he poses to others is linked to a serious difficulty in controlling his behavior, relying in part on pages 10-11 of Dr. Byrne's report. The court focused on Dr. Byrne's opinion that J.M.'s antisocial personality and psychopathic traits are *430 still behaviorally present in the form of his RBW's and a concerning pattern of progress in treatment is followed by acting out resulting in him being demoted to Stage 1 treatment. Dr. Byrne opined J.M. is not adaptively managing his risk as he is granted more privileges and freedoms, and his acting out while in a secure setting gave concerns of an increased probability of acting out if he were given greater access to the community. It was Dr. Byrne's professional opinion that J.M. continues to demonstrate serious difficulty controlling his behavior that would likely be worse in a less restrictive environment. The district court also noted that Dr. Benson indicated that aggression continues to be an issue for J.M., but Dr. Benson did not believe it increased his likelihood to reoffend.
[¶26] There is sufficient evidence to justify the district court's findings that J.M. is a sexually dangerous individual and likely to engage in further acts of sexually predatory conduct.
[¶27] Lisa Fair McEvers
Jon J. Jensen